**CINCINNATI, (City) Plaintiff-Appellee, v. LUCKEY, Defendant-Appellant.**
**CINCINNATI, (City) Plaintiff-Appellee, v. WARREN, Defendant-Appellant.**

Ohio Appeals, First District, Hamilton County.

Nos. 7121, 7122. Decided July 5, 1949.

Ralph E. Cors, Cincinnati, for City of Cincinnati.
Waite, Schindel & Bayless, Philip J. Schneider, Cincinnati,
David P. Tarbell, for Frank J. Luckey and Millard R. Warren.

**OPINION**

By ROSS, PJ.:

These appeals upon questions of law from two judgments of the Municipal Court of Cincinnati and considered together in that they involve the same questions of law and the facts are identical, except that there are different defendants, who were respectively the engineer (No. 1721) and conductor (No. 1722) of a freight train, which it is charged blocked passage over a street in the City of Cincinnati, intersecting the railroad tracks of the Baltimore & Ohio Railroad, for more than ten minutes, contrary to the provisions of an ordinance of such City. Both defendants were found guilty of violating the provisions of such ordinance.

The defendants-appellants claim (1) that the ordinance invades the area of legislative power, assumed by the General Assembly in enacting §7472 GC, and that such ordinance is, therefore, unconstitutional, by reason of conflict with the provisions of **Art. XVIII, Section 3 of the Ohio Constitution;** (2) that the ordinance has the effect of placing a limitation upon interstate commerce, contrary to the provisions of **Art. I, Section 8 of the Constitution of the United States,** and that it is, therefore, unconstitutional; and, (3) that enforce-

ment of the provisions of the ordinance constitutes an unreasonable exercise of the police power vested in the City, and that its provisions should not, therefore, be enforced in the instant cases.

There is no conflict in the evidence.

The freight train in question, operated by defendants, moving slowly over the tracks of the Baltimore and Ohio Railway Company, where such tracks intersect Este Avenue in the City of Cincinnati, blocked such street crossing for more than ten minutes. The train consisted of eighty-seven (87) cars. The speed of the train was estimated at 3 to 5 miles per hour.

From the evidence, it appears that the train originated in St. Louis, and that some of the cars were destined for points outside of Ohio.

Motions made at the conclusion of the evidence for dismissal of the defendants, and motions for new trials were overruled, after the finding of guilty and sentence.

Considering the claims of the defendants-appellants, in order, in **Art. XVIII, Section 3 of the Ohio Constitution** it is provided:

"Municipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws."

In §7472 GC, it is provided:

"A person, or corporation, or a conductor of a train of railroad cars, or other agent or servant of a railroad company, who obstructs, unnecessarily, a public road or highway authorized by any law of this state, by permitting a railroad car or locomotive to remain upon or across it for longer than five minutes, or permits timber, lumber, wood, or other obstructions to remain upon or across it to the hindrance or inconvenience of travelers, or a person passing along or upon such road or highway, shall forfeit and pay for each offense, not less than two dollars, nor more than twenty dollars."

In **Capelle v. B. & O. Rd. Co., 136 Oh St, 203, at page 208** of the opinion it is stated:

"Statutes almost identical in language with present §§7472 and 7473 GC, have existed in Ohio since 1853. In relation to railroads, the expressed object is to penalize railroad employees for permitting a railroad car or locomotive to obstruct a high-

way, unnecessarily, for longer than five minutes to the hindrance or inconvenience of travelers. The underlying purpose is to facilitate the movement of traffic on highways and to discourage unnecessary blockades, causing congestion and delay."

In Section 410-8 of the Ordinances of the City of Cincinnati, in full force and effect at the time involved in these prosecutions, it is provided:

"It shall be unlawful for any railroad company to operate its locomotives, cars or trains of cars in such manner as to block a street crossing for a period of more than ten minutes. Violations of this section shall be punished according to the penalties of Section 410-13."

In Section 410-26 of the ordinances of the City of Cincinnati, also in full force and effect at the times herein involved, it is provided:

"It shall be unlawful for any person or corporation to operate or run any locomotive or railroad car on or across any street, road, lane or alley, at the grade thereof, at a greater speed than ten (10) miles per hour."

It has been firmly established that where the legislature has assumed a jurisdiction of an area of the police power, no municipality may enter such area with municipal legislation **in conflict** with the acts of the legislature expressing such exercise of power. **28 O. Jur., "Mun. Corp." Section 277, p. 442.**

The subject of the ordinance forming the basis of the prosecutions involved and the statute, §7472 GC, is the blocking of streets or roads.

The City and the State have each exercised inherent police powers to protect the public from interference with a reasonable right to proceed upon streets crossing railroad tracks. In each form of legislation the object and purpose is the same. The specific formula differs somewhat in terms, but in the end it is obvious that the aim of each form of legislation is to secure as nearly as possible uninterrupted passage over railroad crossings. The statute applies to a train **remaining** upon a crossing, the ordinance applies to the **operation** of a train over a crossing.

The statute applies to the **unnecessary** blocking of the crossing. The ordinance provides a penalty for blocking,

regardless of necessity produced by incidents of railroad operation.

The statute limits the time of stopping to five minutes; the ordinance permits a ten minutes interruption of street traffic.

In the widest sense, the term "operate" might include starting, running, and stopping, and so construing the word it might be that a conflict in exercise of police power between the legislature and the municipal corporation would exist.

The duty rests upon courts considering the acts of legislative bodies to so construe the language employed as to give effect, if possible, to the provisions therein contained. 37 O. Jur., "Statutes" Section 344, p. 624.

The same rule applying to the construction of statutes applies to construing the ordinances of a City.

It may be assumed that the Council of the City of Cincinnati was aware of the provisions of §7472 GC, and did not intend to legislate upon a subject fully covered by that statute. In the use of the word "operate" it may, therefore, be presumed that Council intended to reach a different situation than that covered by the statute, to-wit: permitting a train or portion thereof "to remain" upon a crossing. The effect of the ordinance is to govern the speed of the train imposing by its limitations a **minimum** speed when crossing a street, just as Section 410-26, supra, of the Cincinnati ordinances prescribes a maximum speed.

These considerations require a conclusion that Council has not usurped a function assumed by the legislature.

The same considerations, however, involve the second claim of appellants—that it, that the effect of these two ordinances —Sections 410-8 and 410-26—is to constitute a regulation of interstate commerce. Any limitation placed on the length of a train engaged in interstate commerce, imposed by a council of a municipal corporation, would obviously be an interference with interstate commerce. The Supreme Court of the United States has held such a limitation beyond the power of a state and obviously such limitation would be beyond the power of any political subdivision thereof. Southern Pacific Co. v. Arizona, ex rel., etc., 325 U. S. 761. The second paragraph of the syllabus is:

"The Arizona Train Limit Law (Arizona Code Ann., 1939, sections 69-119), making it unlawful to operate within the State a passenger train of more than fourteen cars or a freight train of more than seventy cars, held, as applied to interstate trains, invalid as contravening the commerce clause of the Federal Constitution."

Now applying the two ordinances, every train is required to clear the crossing in ten minutes, and yet no train is permitted to travel faster than ten miles per hour, or 60 minutes, or a mile in six minutes. This means that the longest train which could lawfully pass in ten minutes would be a train one and 4/6ths miles long, or as a mile is 5280 feet, a train 8800 feet long. The average length of a freight car is approximately 50 feet, so that any freight train containing more than 176 cars could not pass the crossing in ten minutes, and would violate the provisions of Section 410-8 of the ordinances, and if it went faster than ten miles an hour in order to clear the crossing, would violate the provisions of Section 410-26 of the ordinances.

Considering the two ordinances together which the Municipal Court was required to do, and as this court is also required to do, since it must take judicial notice of that of which the trial court took judicial notice, it must be concluded that the effect of the ordinances is to constitute an interference with interstate commerce, and, under the circumstances existing in these cases, cannot be enforced against the defendants.

The third claim of the appellants is in effect disposed of by these conclusions.

For these reasons, the judgments of the Municipal Court are reversed and the defendants will be dismissed.

ROSS, PJ, HILDEBRANT & MATTHEWS, JJ, concur in syllabus, opinion & judgment.