### YELLOW CAB CO. OF ASHLAND et al. v. MURPHY et al.

Court of Appeals of Kentucky.
Oct. 26, 1951.

Diederich & Lycan, and Browning & Gray, all of Ashland, for appellants.

E. Poe Harris and Dysard & Dysard, all of Ashland, for appellees.

STEWART, Justice.

The Chesapeake and Ohio Railway Company entered into a contract with Yellow Cab Company of Ashland on March 31, 1950, whereby it granted to the latter the exclusive privilege of entering and using its depot grounds to solicit the transportation of passengers or baggage to the exclusion of all others. The Railway Company having failed to put the contract into effect, the Cab Company sued the Railway Company for a declaration of its rights under and for specific performance of the contract. Jim Murphy, d/b/a Checker Cab Company, and Norman W. Berry, d/b/a Vets Safety Cab, taxicab companies in Ashland, were made parties defendant to the petition and the Cab Company seeks to enjoin them from interfering in any manner with the exclusive privilege granted to the Cab Company and contained in its contract with the Railway Company. The Railway Company filed an answer and cross-petition to the suit in which it set out its desire to comply with the terms of the contract and asked that its validity be established. Checker Cab Company and Vets Safety Cab demurred generally to the petition and to the answer and cross-petition. The demurrer in each instance was sustained, and the petition and cross-petition were dismissed after Yellow Cab Company and Railway Company declined to plead further. They appeal.

Appellees insist that the contract sued on is invalid (a) because it attempts to create a monopoly and (b) because it violates Section 214 of the Kentucky Constitution.

At the outset we are faced with a pronouncement of this Court, followed by a line of decisions, to the effect that a railroad company may not make such an exclusive grant as is embraced in the contract. McConnell v. Pedigo et al., 92 Ky. 465, 18 S.W. 15, an opinion handed down by this Court on January 14, 1892, held that the L. & N. Railroad Company could not grant to one person the exclusive privilege of standing hacks at its depot in Glasgow, Kentucky, and thereby prevent other persons from bringing their hacks on and soliciting passenger and freight business at the depot grounds. The Court declared the contract invalid for these reasons: It did not pertain to the railroad company's business as a carrier; it was discriminatory because, except for the favored hackman, it drove from the depot those who were publicly engaged in providing for the traveling public; and it was in palpable violation of the rights of others as a monopoly. The Pedigo case did not state that the contract it voided was contrary to any constitutional or statutory provision of this state.

The Pedigo case was followed by Palmer Transfer Co. v. Anderson, 131 Ky. 217, 115 S.W. 182, 19 L.R.A.,N.S., 756, on January 7, 1909, and this later case, using the former opinion as a precedent, declared a contract similar to the one in the Pedigo case invalid because it granted to one company what it characterized as a practical monopoly of the transfer business. Arguendo the doctrine was recognized in Commonwealth v. Louisville Transfer Co., 181 Ky. 305, 204 S.W. 92, and in Diamond Taxi Co. v. Gilliam, Judge, 216 Ky. 521, 287 S.W. 981.

The rule adhered to by this Court as first laid down in the Pedigo case is not in line with the current weight of authority. Besides Kentucky, only the highest courts of Indiana, Mississippi, Missouri, Montana and Michigan have held such contracts invalid; but in the last three states the decision was controlled, at least in part, by a constitutional or statutory provision. Contracts similar to the one before us have been upheld by English courts. See Barker v. Midland Ry. Co., 18 C.B. 45. The Supreme Court of the United States in

Black & White Taxicab Co. v. Brown & Yellow Taxicab Co., 276 U.S. 518, 48 S.Ct. 404, 407, 72 L.Ed. 681, in declaring valid a contract made by the L. & N. Railroad Company with a taxicab company at Bowling Green, Kentucky, whereby it granted unto the latter the exclusive privilege of going upon its trains, into its depot, and on its surrounding premises to solicit transportation of baggage and passengers, had this to say about the legal principle formulated by this Court: "The cases cited show that the decisions of the Kentucky Court of Appeals holding such arrangements invalid are contrary to the common law as generally understood and applied."

When we now re-examine the reasons this Court has advanced and stood by for almost sixty years for denying a railroad company the privilege of making an exclusive grant such as the one in question we are persuaded that neither logic nor justice will sustain our doctrine. Admittedly, if a principle of law is fallacious and inequitable, it should be abandoned.

We take issue with the Pedigo case when it first asserts that contracts like the one before us do not relate to the railroad company's business. A passenger's status as such ordinarily continues from the time he alights from the carrier's train until he has had a reasonable time to leave the carrier's premises. 13 C.J.S., Carriers, § 565, p. 1073. Moreover, we have held that during the time the passenger is upon the depot grounds the railroad company owes him at least reasonable and ordinary care. McKeehan v. Louisville & N. Railroad Co., 294 Ky. 821, 172 S.W.2d 580. If a railroad company is charged with the safety of its passengers while on its station premises, why should it be prohibited from working out arrangements for their comfort and convenience by providing a suitable means for them to reach and leave its depot? To require a carrier to open its property without restriction to every one who desires to come on its depot grounds and do business with its passengers results in subjecting them to such annoyance and interference as is denounced in Delaware L. & W. Railway Co. v. Town of

Morristown, 276 U.S. 182, 48 S.Ct. 276, 277, 72 L.Ed. 523, in this language: "It is a matter of common knowledge that such competition for the transportation of passengers and their baggage from railway stations is liable, if not indeed certain, to be attended by crowding together of cabmen, confusion, noisy solicitations, importunities and contentions resulting to the annoyance and disadvantage of those sought to be served."

■■ When the Pedigo case next assumed that the granting of an exclusive privilege of soliciting patronage on station grounds to a favored hackman by a railroad company was discriminatory and violative of the rights of others because it barred from the depot those engaged in similar public employment, we believe the writer of the opinion lost sight completely of certain primary rights the railroad company should have as regards its property. There is no public duty imposed upon a common carrier requiring that others who have no business with it as such may have free use of its property at any time for private gain. In this connection, the rule generally accepted in the great majority of jurisdictions is well stated in 44 Am.Jur., Railroads, Sec. 135, p. 348, and should apply in every respect here: "Persons having no business with a railroad have no inherent right to enter upon its premises or trains for the sole purpose of transacting thereon a private business or of soliciting business from the traveling public, and a railroad can exclude such persons from such entry. * * * Furthermore, the fact that the depot grounds of a railroad company are dedicated to public use does not confer the right upon taxicab owners and expressmen to use them for the purpose of soliciting business."

■■ In the Pedigo case, when the contract was finally denounced as a monopoly of a particular business, no legal or factual basis was advanced for this assertion. Actually, a monopoly does not result from such an arrangement. The contract there like the one here does not and cannot prevent others from entering the station grounds of a railroad company to deliver or receive passengers or baggage on an or-

der or contract. While the favored taxicab company is given an advantage in soliciting business, passengers of a carrier are free to choose the service of any taxicab operator of their choice. 13 C.J.S., Carriers, § 576, p. 1089, sets forth this additional well-accepted principle: "This rule, giving a railroad company the right to grant such exclusive privileges, is subject only to regulation by the state in the interest of the public as to the service to be furnished, and is not a monopoly in the odious sense of the word, and does not involve an improper use by the railroad company of its property; nor is it invalid as against public policy or as an illegal discrimination."

■■ In summing up, we believe there is a very fundamental reason why agreements like the one in suit should be upheld, which is, briefly stated, that railroad companies own their depot grounds and they should have the right to contract with reference to them in any manner that does not interfere with their duties as a common carrier. Sir George Jessel, M. R., in Printing Company v. Sampson, L.R. 19 Eq. 462, said that competent persons "shall have the utmost liberty of contracting, and that their contracts, when entered into fairly and voluntarily shall be held sacred, and shall be enforced by Courts of justice."

■ It is argued by appellees that the contract is violative of Section 214 of the state Constitution which provides that no railroad company shall make any exclusive contract with any individual, association or corporation for the handling of freight, "or for the conduct of any business as a common carrier." It is claimed that the last clause invalidates the contract. We do not arrive at such an interpretation. The Railroad Company is under no obligation to transport passengers and baggage from its depot other than by rail. The contract therefore is not an extension of its business as a common carrier; it is merely an optional service that it undertakes for the welfare of its passengers.

We therefore conclude that the doctrine of law set forth in the Pedigo case and adhered to by the other decisions mentioned herein is erroneous and unsound and we

hereby declare it no longer in force and effect in this state.

Wherefore, the judgment is reversed for proceedings not inconsistent with this opinion.