**CITY OF HARRODSBURG, Appellant,**

v.

**SOUTHERN RAILWAY COMPANY, Appellee.**

Court of Appeals of Kentucky.

Dec. 5, 1969.

Rehearing Denied Feb. 6, 1970.

Appeal Dismissed June 22, 1970.
See 90 S.Ct. 2198.

John L. Keller, Harrodsburg, for appellant.

W. Earl Dean, Sr., Harrodsburg, Albert F. Reutlinger, Louisville, for appellee.

CULLEN, Commissioner.

The City of Harrodsburg appeals from a judgment of the Mercer Circuit Court which dismissed a prosecution against the Southern Railway Company for violation of a 1967 ordinance of the city that prohibited the blocking of a street crossing by a train for more than five minutes. The judgment was based on the court's opinion that the ordinance, as undertaken to be applied to the facts of this case, was unconstitutional as imposing an unreasonable burden on interstate commerce.

The railway company was prosecuted on a charge that on May 15, 1967, one of its trains blocked Lexington Street in Harrodsburg for a period of 14 minutes. In the police court the company was found guilty and was fined $100 (the ordinance provided for a fine of not less than $50 nor more than $100 for each offense). The company appealed to the circuit court, with the result hereinbefore noted.

The following stipulation was entered into in the circuit court:

"For the Court's ease and convenience there being no issue of fact attendant upon the within appeal, the parties hereto, by counsel, stipulate that the following facts are true.

1. Southern Railway Company is a corporation whose principal business is the interstate transportation of freight by railroad.

2. Louisville Southern Railroad was the predecessor of Southern Railway Company and the Southern Railway Company has succeeded to all the rights, privileges and obligations of the said Louisville Southern Railroad.

3. The maximum safe speed of a train on Southern Railway tracks through the City of Harrodsburg, Kentucky, on May 15, 1967 and prior thereto, was 12 miles per hour by reason of the curvature and nature of the railroad tracks through said City.

4. An Ordinance of the City of Harrodsburg No. 91.710 adopted September 20, 1966, reenacted 31st of January, 1967, and in full force and effect on May 15, 1967 provides:

BE IT ORDAINED by the Board of Commissioners of the City of Harrodsburg, Kentucky:

It shall be unlawful for any person or persons, company or corporation and or the agents, employees or operators of any such person, persons, company or corporation to in any way cause to be placed across any sidewalk, street, street crossing, alley, public highway or railroad crossing any blockade or obstruction of any kind whatsoever in the City of Harrodsburg, Ky. and permit said blockade or obstruction across the same to remain thereon for a greater length of time than five minutes and any person or persons, company or corporation and or their agents, employees or operators violating the provisions of this ordinance shall be fined not less than $50.00 nor more than $100.00 for each offense. This ordinance shall take effect upon its passage and publication.

5. Heretofore on the 15th day of May, 1967, the Southern Railway Company operated a train of railroad cars through the City of Harrodsburg, Kentucky, known as Train No. 56, at approximately 12 miles per hour and this rate of speed was constant at all times pertinent to this appeal.

6. The Southern Railway Company's train consisted of 233 railroad freight cars, and, including the locomotives, was approximately 11,900 feet in length.

7. The train of cars mentioned in Section 6 above originated at Atlanta, Georgia and had crossed the borders of Georgia-Tennessee and Kentucky-Ten-

nessee, before it reached the City of Harrodsburg, on the date mentioned in Section 5 above. A large proportion of this train, although made up as such in Atlanta, Georgia, originated at points beyond the borders of the State of Georgia.

8. 190 cars of the train mentioned in Section 6 above were ultimately destined for points beyond the borders of the State of Kentucky.

9. On the 15th day of May, 1967, Southern Railway Company Train No. 56 above mentioned, although in motion at all times as stated in Section 5 above, blocked the Lexington Street crossing in the City of Harrodsburg, Kentucky, while passing over said crossing, for a period of time slightly in excess of 12 minutes.

10. On the 29th day of May, 1967, the Southern Railway Company was convicted in the Police Court at Harrodsburg, Kentucky for violating the ordinance mentioned in Section 4 above because it blocked the crossing in the manner set forth in Section 9, above and it has properly appealed from that conviction under said Ordinance to this Court."

The circuit court observed that the indirect effect of the ordinance, when applied to moving trains, would be to limit the length of trains passing through Harrodsburg, and it was the court's opinion that this would constitute an unreasonable restraint on interstate commerce as applied to interstate trains.

No contention is made in this case that Congress has preempted the field as to the states by exclusive legislation, or that the State of Kentucky has preempted the field as to its municipalities by exclusive state legislation. As to the latter point, it is true that Kentucky has a statute, KRS 277.-200, prohibiting obstruction of a street by a railroad train for more than five minutes at a time (but for violation of which no criminal penalty is prescribed); however, another statute, KRS 96.070, expressly grants to cities of the fourth class (of which Harrodsburg is one) the right to "prevent railroads from obstructing public ways of the city." Nor is there any argument that a city has no power to enact ordinances having any effect at all on interstate commerce (which argument would not be valid; see 15 Am.Jur.2d, Commerce, sec. 69, p. 714; 44 Am.Jur., Railroads, sec. 389, p. 602).

The sole contention in the case is that the Harrodsburg ordinance places an unreasonable burden on interstate commerce.

There have been brought to our attention only four reported cases dealing with the specific question here in issue. They are Kahn v. Southern Railway Company, 4 Cir., 202 F.2d 875; City of Cincinnati v. Luckey, 85 Ohio App. 463, 87 N.E.2d 894; 153 Ohio St. 247, 91 N.E.2d 477; Ocean View Improvement Corporation v. Norfolk & Western Ry. Co., 205 Va. 949, 140 S.E.2d 700; and Commonwealth v. New York Central Railroad Co., 350 Mass. 724, 216 N.E.2d 870.[1]

*Kahn* involved an ordinance of Asheville, North Carolina, prohibiting a train from blocking a street crossing for longer than three minutes at one time. The specific holding in *Kahn* was that the ordinance applied only to trains *standing still* and not to *moving* trains. However, the court volunteered its view that if the ordinance were construed as applying to moving trains it would be invalid as imposing an unreasonable burden on interstate commerce.

In *Luckey* the initial decision, by the Court of Appeals of Ohio, was that a Cincinnati ordinance prohibiting trains from blocking a crossing for a period of more than ten minutes was invalid as constituting an interference with interstate

---

[1] In a rescript opinion in October 1969 the Massachusetts Supreme Judicial Court adhered to the holding in the New York Central case. See Commonwealth v. Penn Central Company, Mass., 252 N.E. 2d 218.

commerce. However, the Supreme Court of Ohio, on appeal, ruled that the holding of the Court of Appeals was in error, because there was *no evidence* that the ordinance would unreasonably interfere with interstate commerce.

In *Ocean View* the Virginia court, in passing on a local ordinance prohibiting the blocking of a crossing for more than eight minutes, simply adopted the holding in *Kahn*.

In *New York Central* the Massachusetts Supreme Judicial Court held that on the evidence in the case no unreasonable interference with interstate commerce was created by a statute imposing a five-minute limit on the blocking of traffic at a crossing by a moving train. The court distinguished *Kahn, Luckey* and *Ocean View*, and held that *Southern Pacific* was not controlling.

So, in the way of decisions of major appellate courts, we have dicta of two courts that a crossing-blocking ordinance, if construed to apply to moving trains, would impose an unreasonable burden on interstate commerce; and a direct holding of two courts that the question of whether an unreasonable burden is imposed depends on *evidence*. As we presently shall show, we think that the latter holding is the correct one.

*Kahn* (which *Ocean View* adopted) purported to find authority for its dicta in Southern Pacific Co. v. Arizona ex rel. Sullivan, 325 U.S. 761, 65 S.Ct. 1515, 89 L.Ed. 1915, which involved an Arizona statute limiting the *length* of trains. The same is true of the Ohio Court of Appeals' decision in *Luckey*. We are constrained to examine *Southern Pacific* in depth to see whether it does supply the authority so ascribed to it.

We note the following statements in Southern Pacific (325 U.S. at pp. 767, 768, 770, 773, 775, 782, 65 S.Ct. at pp. 1519, 1520, 1521, 1522, 1523, 1526, 89 L.Ed. at pp. 1923, 1924, 1925, 1927, 1928, 1931):

"* * * When the regulation of matters of local concern is local in character and effect, and its impact on the national commerce does not seriously interfere with its operation, and the consequent incentive to deal with them nationally is slight, such regulation has been generally held to be within state authority. * * *

*  *  *  *  *  *

"* * * But between these extremes lies the infinite variety of cases in which regulation of local matters may also operate as a regulation of commerce, in which reconciliation of the conflicting claims of state and national power is to be attained only by some appraisal and accommodation of the competing demands of the state and national interests involved. * * *

*  *  *  *  *  *

"* * * in their application state laws will not be invalidated without the support of *relevant factual material* which will 'afford a sure basis' for an informed judgment. * * * (our emphasis)

*  *  *  *  *  *

"The unchallenged *findings* leave no doubt that the Arizona Train Limit Law imposes a serious burden on the interstate commerce conducted by appellant. * * * (our emphasis)

*  *  *  *  *  *

"The trial court found that the Arizona law had no reasonable relation to safety, and made train operation more dangerous. *Examination of the evidence and the detailed findings makes it clear that this conclusion was rested on facts * * (our emphasis).

*  *  *  *  *  *

"* * * The decisive question is whether in the circumstances the total effect of the law as a safety measure in reducing accidents and casualties is so slight or problematical as not to outweigh the national interest in keeping interstate commerce free from interferences which seriously impede it * * *.

\* \* \* \* \* \*

"Here we conclude that the state does go too far. Its regulation of train lengths, admittedly obstructive to interstate train operation, and having a seriously adverse effect on transportation efficiency and economy, passes beyond what is plainly essential for safety since it does not appear that it will lessen rather than increase the danger of accident. \* \* \*"

The foregoing excerpts from *Southern Pacific* make plain to us that determination of "the relative weights of the state and national interests" is to be based on "relevant factual material," to-wit, *evidence*. In *Kahn* the federal court said that it was "obvious," without any evidence that the crossing-blocking ordinance would result in an unconstitutional interference with the national commerce. The Ohio Court of Appeals took the same view in *Luckey*. We reject this proposition, as did the Ohio Supreme Court on the appeal in *Luckey*, and as did the Massachusetts Supreme Judicial Court in *New York Central*. In view of the detailed, thorough and exhaustive consideration the Supreme Court gave to the evidence in *Southern Pacific*, in determining whether a statute *directly* limiting the length of trains was constitutional, we do not understand how a court could say that, with no evidence at all, an ordinance *indirectly* limiting the length of trains "obviously" is unconstitutional.

■ If there is anything obvious in this case we think it is the fact that the blocking of the main streets of Harrodsburg for long periods of time can create a very serious safety problem, as well as materially impede the flow of interstate highway traffic. The weight of the local interest is apparent, from common knowledge and experience. On the other hand, there is no basis in common knowledge or experience alone on which to rest a finding that to require trains to clear the street crossings in Harrodsburg in five minutes will seriously burden interstate commerce.

It is our conclusion that the trial court erred in dismissing the prosecution.

■ Since this case involves a misdemeanor punishable by fine only, the judgment may be reversed on the city's appeal, for further proceedings. See Commonwealth v. Devine, Ky., 396 S.W.2d 60.

The judgment is reversed with directions that the court enter judgment upon the stipulation pursuant to which the case was submitted.

All concur.