**DIXIE TAXI SERVICE, INC., et al.,**
Appellants,

v.

**LOUISVILLE AND JEFFERSON COUNTY AIR BOARD, Appellee.**

Court of Appeals of Kentucky.

April 2, 1971.

David Kaplan, Stuart Lyon, Edward Brady, Jr., Louisville, for appellants.

T. Kennedy Helm, Jr., Stites & McElwain, Louisville, for appellee.

CULLEN, Commissioner.

In this action, brought by the Louisville and Jefferson County Air Board (which operates Standiford Field, the air terminal for Louisville) against a number of taxicab operators, judgment was entered permanently enjoining the operators from soliciting or picking up passengers at Standiford Field, or transporting or attempting to transport passengers from Standiford Field, without first obtaining authority from the Air Board to do so. The operators have appealed, claiming illegality of the regulation of the Air Board on which the injunction was predicated.

The regulation in question prohibits any motor carrier for hire from accepting business originating at the airport without a contract with the Air Board. For many years Louisville Taxicab and Transfer Company, operator of "Yellow Cabs," has had such a contract with the board, under which the company, in return for being given the privilege of soliciting and picking up passengers at the airport, and being provided with parking or "stand" space, has agreed to provide adequate service on an around-the-clock basis, to maintain specified insurance protection, and to pay to the board ten percent of its gross receipts from fares originating at the airport, with a minimum guarantee of $1,500 per month. In 1969 the company paid the Air Board $41,802 under the contract.

The privilege of entering into a similar contract is available to all other taxi operators but because of the size of the required minimum guarantee none has chosen to do so. Instead, the other operators have claimed the right to solicit and pick up passengers at the airport without any contract. The trial court made the following findings as to their activities in this regard:

"11. In the course of soliciting and picking up passengers, some or more of the defendants have frequently and repeatedly driven to the Field empty for the purpose of waiting for and seeking patronage; have ignored the instructions of the airport traffic guards as to the solicitation and picking up of passengers and as to the parking of their vehicles; have parked in crosswalks, Yellow Cab stands, loading zones, and in the airport gasoline station while waiting for patronage; have double-parked and blocked traffic; have left their cabs and gone into the Terminal building for the purpose of soliciting passengers; have verbally and physically contested for the patronage of passengers; have slowly cruised around the airport driveways, looking for passengers; have argued with and cursed plaintiff's personnel; and have offered to cut prices to take business away from Yellow Cab. Each of the named defendants has committed one or more of the above violations.

"12. On two consecutive days in November, 1969, the drivers of taxicabs operating under the permits of, and in the name of, the corporate defendants, met at a place or places off Standiford Field, and paraded to the Lee Terminal build-

ing at Standiford Field in convoy formation, where they pulled into the curb and occupied the curb space. At this time the defendants had not obtained, nor officially requested, nor been refused, the right to operate from Standiford Field. The stated purpose of this demonstration was to make a showing, so that the public would know that the defendants considered they were being discriminated against by plaintiff."

The activities above described precipitated this lawsuit in which the Air Board sought to enjoin operations by the noncontracting taxi operators.

The Air Board rests its claim of right to regulate taxi operations at the airport on the ground that under KRS 183.132 to 183.178 it is an independent body politic and corporate with title to the airport property and with the power to regulate and control the facilities of the airport, including the vehicular driveways. The trial court so found, and specifically found that the driveways are located, constructed and maintained by the Air Board, are clearly distinguishable from the city streets of Louisville, and are not city streets. The Air Board asserts that the regulations of taxis are necessary in carrying out its duty to provide adequate ground transportation for air travelers, and that it has a duty to see that the ground-transportation service is available when needed, is efficient and safe and provides adequate insurance protection.

The question of the right and power of an airport board to exclude noncontracting taxi operators has reached the courts of other jurisdictions in a number of cases and in every case except one the right and power have been upheld, even to the extent of upholding purely *exclusive* concessions. See 8 Am.Jur.2nd, Aviation, sec. 56, pp. 675, 676; Annotation, 40 A.L.R. 2d 1060 @ 1062. The only exception is City and County of Denver v. Publix Cab Co., 135 Colo. 132, 308 P.2d 1016, which we shall discuss presently.

Prior to the arising of the question in relation to airports a like question had reached the courts concerning railroad depots. The Supreme Court of the United States (and the majority of other courts) had upheld the validity of contracts by railroads granting exclusive concessions for taxicab service from depots. See Delaware, Lackawanna & Western R. R. Co. v. Town of Morristown, 276 U.S. 182, 48 S.Ct. 276, 72 L.Ed. 523; Black & White Taxicab Co. v. Brown & Yellow Taxicab Co., 276 U.S. 518, 48 S.Ct. 404, 72 L.Ed. 681. Our own court, after having taken the opposite view for a long period of years, finally (in 1951) swung around to the majority view. See Yellow Cab Co. of Ashland v. Murphy, Ky., 243 S.W.2d 42.

The decision in the lone-standing Denver airport case, cited above, was based expressly on the fact that the streets passing in front of the airport terminal were city streets in every respect, being maintained, controlled and policed by the city the same as other city streets. The appellants in the instant case seek to bring it within the rationale of the Denver case, but their effort fails because here the trial court made the finding (fully supported by the evidence) that the vehicular driveways passing by the terminal at Standiford Field are *not* city streets, and are not located or maintained by the city.

The authority applicable to the situation in the instant case (which differs from that in the Denver case) then is unanimous that the governing authority of the airport has the right and the power to grant an exclusive taxicab concession. We find no reason to take a different view, and we do not feel called upon to quote from the decisions of the other courts the reasons on which they relied.

The appellants argue that the regulation here in question imposes an unreasonable burden on interstate commerce. They cite United States v. Yellow Cab Co., 332 U.S. 218, 67 S.Ct. 1560, 91 L.Ed. 2010, which dealt with taxi service from one rail-

road terminal to another railroad terminal, and Southerland v. St. Croix Taxicab Ass'n, 3 Cir., 315 F.2d 364, which dealt with the furnishing of tour-bus service in connection with prepaid "package" tours. Neither of those cases is authority for the proposition advanced by the appellants. In the Yellow Cab case the Supreme Court stated expressly that taxicab service between a railroad station and the passenger's home or other point of final destination in the community in which the station is located is not an integral part of interstate transportation. And in the St. Croix case the federal court stated that the right of the airport authorities to grant a franchise to one taxicab operator to the exclusion of other taxicab operators was not denied. The point of interference with interstate commerce was not raised in the trial court in the instant case and no evidence was taken addressed to that question. We think that in any event a finding of unreasonable interference would have to be supported by evidence. Cf. City of Harrodsburg v. Southern Railway Company, Ky., 455 S.W.2d 576.

◼ The appellants suggest that the Air Board's regulation conflicts with a provision of the Louisville ordinance governing taxicab operations, which requires a taxi operator to carry any orderly passenger on request. We think it is clear, however, that the ordinance provision deals only with *who* must be carried—not with *where* passengers may be picked up. Certainly the ordinance cannot require a private property owner to allow taxicabs uncontrolled access to his property, and in the areas of control here involved we think the Air Board may be equated with a private owner.

◼ The appellants' final argument is that the regulation deprives them of equal protection of the law. No relevant authority is cited for that proposition. All of the cases hereinbefore mentioned, upholding the right and power of an airport board to make such a regulation, negative the idea of any denial of equal protection of

the law. They show that such regulations have a reasonable basis and serve a public interest, present which there is no violation of the equal protection clause. Cf. Morey v. Doud, 354 U.S. 457, 77 S.Ct. 1344, 1 L.Ed.2d 1485; see also In re Peterson, 51 Cal. 177, 331 P.2d 24.

The judgment is affirmed.

MILLIKEN, C. J., and HILL, PALMORE, NEIKIRK, and REED, JJ., concur.

STEINFELD, J., not sitting.