RENDERED: JUNE 25, 2026
TO BE PUBLISHED

# Supreme Court of Kentucky

2024-SC-0306-DG

EMERY LAW OFFICE, INC.                                                          APPELLANT

ON REVIEW FROM COURT OF APPEALS
V.                                NO. 2023-CA-0586-MR
JEFFERSON CIRCUIT COURT NO. 22-CI-002904

JOEL FRANKLIN                                                          APPELLEE

**OPINION OF THE COURT BY JUSTICE THOMPSON**

**REVERSING**

We determine whether a fee allocation provision contained in an attorney employment agreement violates the Kentucky Rules of the Supreme Court (SCR) 3.130(5.6) and whether our decision in *Baker v. Shapero*, 203 S.W.3d 697 (Ky. 2006), mandates a quantum meruit analysis whenever a lawyer leaves a firm and continues representing some clients. The Court of Appeals concluded that the agreement at issue violated SCR 3.130(5.6) and remanded for further proceedings. We granted discretionary review.

**I. FACTS AND PROCEDURAL HISTORY**

The Emery Law Office (Emery) employed Joel Franklin as an associate attorney in March 2020. Emery paid Franklin a salary with the possibility of earning quarterly bonuses based on the revenue he generated. Emery and Franklin also entered into a separation agreement that included a fee allocation provision. The separation agreement provided that if Franklin's employment with the firm ended and clients of Emery elected to continue their

representation with him, the firm would receive 75% of any contingency fee ultimately earned in those cases, along with reimbursement of costs advanced before his departure.

Franklin worked on a number of client matters that originated with the firm. In performing this work, Franklin used the firm's facilities, personnel, and other resources.

Emery terminated Franklin's employment in April 2022. Following his departure, the clients whose cases had been assigned to him were notified and given the option to remain represented by Emery, to continue their representation with Franklin, or to select another attorney entirely.

Fourteen clients chose to have Franklin continue representing them. Three cases resulted in no fee, and Emery waived the fee in one. This left ten cases at issue, and two remain pending as of oral argument.

A dispute subsequently arose between the parties concerning the enforceability of the fee allocation in the separation agreement. Franklin notified Emery about one month after his termination that he would not divide the fees according to the contract. Emery responded by suing Franklin for a declaration of rights that the contract was valid and for breach of contract for failure to pay fees owed. Following Franklin's deposition, both parties filed motions for summary judgment in the Jefferson Circuit Court. The circuit court entered a judgment enforcing the fee allocation clause according to its terms.

Franklin appealed, and the Kentucky Court of Appeals reversed the circuit court's judgment. The Court of Appeals concluded that the fee allocation provision violated public policy as expressed in SCR 3.130(5.6) by imposing a financial disincentive that could restrict Franklin's ability to practice law. Emery sought discretionary review, which this Court granted.

## II. ANALYSIS

### A. Standard of Review

Summary judgment should be granted if the evidence shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Kentucky Rules of Civil Procedure (CR) 56.03; *Baumann Paper Co., Inc. v. Holland,* 554 S.W.3d 845, 848 (Ky. 2018). A circuit court may grant summary judgment "only where the movant shows that the adverse party cannot prevail under any circumstances." *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.,* 807 S.W.2d 476, 479 (Ky. 1991). Contract formation and whether the terms of a contract violate public policy are questions of law to be reviewed de novo. *Baumann Paper Co.,* 554 S.W.3d at 848; *State Farm Mut. Auto. Ins. Co. v. Hodgkiss-Warrick,* 413 S.W.3d 875, 878 (Ky. 2013).

### B. Emery and Franklin Entered Into a Valid Contract That Does Not Violate Public Policy.

Emery argues that the fee allocation clause in Franklin's separation agreement is a valid and enforceable contractual term that does not violate SCR 3.130(5.6) because it does not restrict Franklin's ability to practice law or impair client choice.

Franklin argues that the public policy of SCR 3.130(5.6) focuses on protecting client choice, and that the separation agreement undermines that choice by forcing an attorney to evaluate whether continued representation is financially feasible under an unfair fee allocation.

Before evaluating the public policy challenge under SCR 3.130(5.6), we begin with the general principles applied to contracts in Kentucky that establish the context for evaluating whether the separation agreement violates the rule. The ability of private parties to enter into contracts is a core value in the Commonwealth of Kentucky: "competent persons shall have the utmost liberty of contracting, and that their contracts, when entered into fairly and voluntarily shall be held sacred." *Yellow Cab Co. of Ashland v. Murphy*, 243 S.W.2d 42, 45 (Ky. 1951) (internal quotation marks omitted). Therefore, "contracts voluntarily made between competent persons are not to be set aside lightly." *Zeitz v. Foley*, 264 S.W.2d 267, 268 (Ky. 1954). *Zeitz* emphasized that courts generally enforce agreements unless a clear public policy doctrine requires otherwise. *Id.*

The liberty, freedom, and economic philosophy expressed in *Yellow Cab* and *Zeitz* articulates the essence of contract law in Kentucky. In *Cumberland Valley Contractors, Inc. v. Bell Cnty. Coal Corp.*, 238 S.W.3d 644, 654 (Ky. 2007), we stated: "Given that the clause at issue was negotiated as part of an arm's-length transaction between two business corporations with presumably equal bargaining power, we find no compelling reason to disturb their written contract." *See Hopkinsville Motor Co. v. Massie*, 228 Ky. 569, 15 S.W.2d 423,

4

424 (1929) ("Where the parties put their engagement in writing all prior negotiations and agreements are merged in the instrument, and each is bound by its terms unless his signature is obtained by fraud or the contract be reformed on the ground of fraud or mutual mistake, or the contract is illegal"); *Superior Steel, Inc. v. Ascent at Roebling's Bridge, LLC*, 540 S.W.3d 770, 786 (Ky. 2017) ("Kentucky . . . has long respected freedom of contract and allowed parties to allocate among themselves the foreseeable risks").

Courts apply the public policy exception to void contracts only in narrow, well-defined circumstances. "Courts will not disregard the plain terms of a contract between private parties on public policy grounds absent a clear and certain statement of strong public policy in controlling laws or judicial precedent." *Hodgkiss-Warrick*, 413 S.W.3d at 880. Public policy, when used to invalidate a contract, must be clearly grounded in established law rather than derived from a court's general notions of the public interest. *Id.* at 880–81. This "power of courts to declare a contract void for being in contravention of sound public policy, is a very delicate and undefined power, and . . . should be exercised only in cases free from doubt." *Equitable Loan & Sec. Co. v. Waring*, 44 S.E. 320, 343 (Ga. 1903); *Stephens v. S. Pac. Co.*, 41 P. 783, 784 (Cal. 1895); *Richmond v. Dubuque & S.C.R. Co.*, 26 Iowa 191, 202 (1868).

These principles regarding freedom to contract frame our analysis of whether this particular agreement violates the ethical restriction embodied in SCR 3.130(5.6). That rule—unlike general contract principles—imposes

5

professional limits on restricting an attorney's ability to practice law. SCR 3.130(5.6) states:

A lawyer shall not participate in offering or making:

(a) a partnership or, shareholders, operating, employment, or other similar type of agreement that restricts the right of a lawyer to practice after termination of the relationship, except an agreement concerning benefits upon retirement; or

(b) an agreement in which a restriction on the lawyer's right to practice is part of the settlement of a client controversy.

The plain language of the rule in both sections (a) and (b) prevents an agreement from restricting a lawyer's right to practice. The rule is titled, "Restrictions on Right to Practice." This rule is in Chapter Five of the Rules of Professional Conduct, which covers Law Firms and Associations. Thus, the rule is focused on ensuring agreements do not unreasonably restrict the practice of law.

In *Kentucky Bar Ass'n (KBA) v. Truman*, 457 S.W.3d 325, 326–27 (Ky. 2015), we publicly reprimanded Truman for entering into a highly restrictive separation agreement with an associate that prevented the associate from soliciting or even contacting clients if the associate left the firm. The basis for the reprimand was that Truman violated SCR 3.130(5.6) by restricting the former associate's ability to practice law. *Id.* at 326-28. While the fee agreement was part of the consideration, the absolute bar against contacting actual clients contained in the agreement persuaded us to reprimand Truman for executing the improper agreement.

The separation agreement here did not explicitly restrict Franklin's ability to practice law. The parties agree that all clients were informed of their options to remain with Emery, continue with Franklin, or select new counsel. Nothing in the record indicates that the agreement operated to prevent Franklin from practicing law or accepting any representation he wished to undertake.

The Court of Appeals reasoned that the fee allocation clause in the separation agreement created a financial disincentive for an attorney leaving a firm to retain clients, which unreasonably restricts the attorney's practice. This is rebutted by the record. Franklin did, in fact, continue representing fourteen clients he was assigned while at Emery. Franklin failed to establish that enforcing the fee allocation provision would restrict his ability to practice law.

These terms do not violate public policy. We reverse the Court of Appeals and uphold the circuit court's entry of summary judgment for Emery. In doing so, we reiterate that SCR 3.130(5.6) controls attorney fee allocation agreements, but the record here does not demonstrate an actual or functional restriction of practice.

### C. *Baker v. Shapero* Does Not Require Quantum Meruit Analysis Every Time an Attorney Leaves a Firm.

The Court of Appeals ruled that the fixed 75% fee share Emery would receive lacked a rational relationship to work performed and created a disincentive that could impair client choice and remanded the case for further proceedings to determine a proper division pursuant to a quantum meruit analysis. Emery argues that *Baker*, 203 S.W.3d 697, does not require a

7

quantum meruit trial because *Baker* dealt with a successive counsel fee dispute, rather than the enforcement of a separation agreement.

In *Baker*, Shapero's firm invested several months of work on the client's case before being discharged. When the case resolved, Shapero's firm filed a lien to collect the entire contingency fee from the original contract signed by the client. We held that Shapero's firm was limited to recovery in quantum meruit instead of the full contract fee. *Baker*, 203 S.W.3d at 699.

When a client discharges an attorney without cause before the case is resolved and hires new counsel who completes the representation, quantum meruit is the available method to measure appropriate compensation between prior and current counsel. Nothing in *Baker* suggests that a quantum meruit trial is required every time a lawyer leaves a firm. Rather, *Baker* applies only when there is no valid agreement governing fee allocation between successive, unaffiliated counsel. Where, as here, the fee allocation concerns clients whose matters originated within the firm and is addressed in a freely negotiated separation agreement, the analysis is governed by contract principles.

### III. CONCLUSION

Our holding today in reversing the Court of Appeals and reinstating the Jefferson Circuit Court's grant of summary judgment to Emery is narrow. First, we conclude that the fee allocation provision at issue in a separation agreement—negotiated as part of an employment relationship between a law firm and an associate—is not, on these facts, a per se violation of SCR 3.130(5.6). The agreement imposed no direct restriction on Franklin's ability to

8

practice law, and the record does not demonstrate that it impaired any client's freedom to choose counsel. Second, we clarify that *Baker* does not require a quantum meruit proceeding every time an attorney departs a firm. *Baker* supplies a default rule for disputes between successive, unaffiliated counsel in the absence of a governing agreement and does not displace a valid contract between a firm and an associate. We express no view on either the validity of other fee allocation terms or separation agreements not before us, or on contract law defenses not raised in this case. Accordingly, we reverse and remand for enforcement of the separation agreement.

All sitting. Bisig, Goodwine, and Keller, JJ., concur. Conley, J., dissents by separate opinion which Lambert, C.J.; and Nickell, J., join.

CONLEY, J., DISSENTING. The Court declares that the fee allocation provision does not "on these facts" violate public policy expressed through SCR 3.130(5.6). Respectfully, while I do not disagree that Franklin has failed to demonstrate how enforcement of the fee allocation provision restricted his ability to practice law, the inquiry is one of public policy and not of individual merits. Accordingly, I must dissent as the Court has misapplied the correct test.

"[F]indings of fact are not at issue" when considering whether a contractual provision violates public policy. *Cumberland Valley Contractors, Inc. v. Bell Cnty. Coal Corp.*, 238 S.W.3d 644, 647 (Ky. 2007). The question is whether the contractual provision "is inherently vicious as being against public policy," not whether it was actually vicious against the party seeking its non-

9

enforcement. *Ky. Ass'n of Highway Contractors v. Williams*, 213 Ky. 167, 280 S.W. 937, 939 (1926). Regardless of the sanctity of contracts and the freedom of contract, "if the consideration is to do something opposed to the public policy of the state or nation, it is illegal and absolutely void, however solemnly made." *Id.* The true test for whether a contractual provision violates public policy is thus:

> Where a contract belongs to this class, it will be declared void, although in the particular instance *no injury to the public* may have resulted. In other words, its validity is determined by its *general tendency at the time it is made,* and, if this is *opposed to the interests of the public,* it will be invalid, even though the intent of the parties was good and no injury to the public would result in the particular case. The test is the *evil tendency* of the contract and not its actual injury to the public in a particular instance.

*Id.*

I agree with the Court of Appeals below that the fee allocation provision under consideration, while perhaps resulting in no injury in this particular instance, does oppose the interests of the public generally. As the Court of Appeals observed, it

> provides no formula or procedure for dividing fees on any given case reasonably calculated to compensate the firm for the resources expended by the firm on the representation as of the date of the lawyer's departure. Rather, it arbitrarily assesses the

10

same fee percentage – "together with the repayment of all costs" – to *any* case Franklin chose to take with him upon departing the firm.

The unsurprising result is that in some other instance the fee allocation could "end up being an amount so high as to discourage the attorney from taking the case, thereby denying the client the attorney of his or her choice – particularly in a case that might require a lengthy and complicated trial to obtain recovery." That violates public policy.

Because the Court has focused on whether the fee allocation provision actually injured Franklin, rather than whether it would injure the public interest generally, I cannot agree with its resolution of this case. The Court's own disposition demonstrates this. It professes its ruling to be narrow and based on the facts, unambiguously implying that in another case the same fee allocation provision could be held violative of public policy if the attorney could demonstrate injury. That is not how public policy doctrine works. "The test is the *evil tendency* of the contract and not its actual injury to the public in a particular instance." *Id.* That the Court has even acknowledged, albeit impliedly, that the fee allocation provision could be violate of SCR 3.130(5.6) in another case under different facts demonstrates there is an evil tendency in the fee allocation provision. A correct application of the public policy doctrine necessitates declaring it void now, rather than waiting for some other case where an individual attorney could demonstrate actual harm.

11

I would affirm the Court of Appeals.

Lambert, C.J.; and Nickell, J., join.

COUNSEL FOR APPELLANT:

Peter Lucas Ostermiller
Peter Ostermiller Attorney at Law

Andrew Scott Epstein,
Bahe, Cook, Cantley, & Nefzger PLLC

COUNSEL FOR APPELLEE:

Joseph E. Blandford, Jr.