COMMONWEALTH *vs.* NEW YORK CENTRAL RAILROAD
COMPANY.

Middlesex.    March 7, 1966. — May 16, 1966.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, CUTTER, KIRK,
SPIEGEL, & REARDON, JJ.

*Railroad,* Obstruction of way, Grade crossing.  *Constitutional Law,* Interstate commerce.  *Way,* Public: obstruction.  *Interstate Commerce.*

G. L. c. 160, § 151, dealing with obstruction of public ways by railroad
trains, applies to moving trains as well as to stationary trains [726];
SPALDING & CUTTER, JJ., dissenting.

There was no interference with interstate commerce violative of the commerce clause of art. 1, § 8, of the Federal Constitution by applying
G. L. c. 160, § 151, and imposing the penalty thereof where a railroad
freight train, which was composed of cars arrived from another State
at the railroad's classification plant in Massachusetts and being transferred on a branch line to nearby places here, consumed over five minutes in moving over a grade crossing of a public way, even if such
application of the statute would result in restriction of the number
of cars in each "movement" over that crossing and in a much more
inefficient and costlier operation [728]; SPALDING & CUTTER, JJ.,
dissenting.

COMPLAINT received and sworn to in the First District
Court of Southern Middlesex on May 26, 1965.

Upon appeal to the Superior Court the case was heard by
*Lurie, J.*

*Richard J. Ferriter* for the defendant.

*Barry M. Haight,* Assistant District Attorney (*Ruth I.
Abrams,* Assistant District Attorney, with him), for the
Commonwealth.

WILKINS, C.J.   This complaint under G. L. (Ter. Ed.)
c. 160, § 151, charges that on May 23, 1965, the defendant
railroad did obstruct and occupy Waverly Street, a public
way, in Framingham "with its cars or engines for more
than five minutes at one time."   The complaint was originally brought in the First District Court of Southern
Middlesex, where the defendant was found guilty.   See
*Commonwealth* v. *New York Cent. & Hudson River R.R.*

206 Mass. 417. On appeal to the Superior Court the defendant filed a motion to dismiss, which was denied. It excepted and appealed. At the trial before a judge sitting without jury, it being admitted that the defendant's cars obstructed Waverly Street by consuming approximately seven minutes in traversing the crossing, the defendant was found guilty and sentenced to forfeit $100.

There were two grounds to the motion to dismiss: (1) General Laws (Ter. Ed.) c. 160, § 151, "is not applicable to *moving* trains." (2) If applicable to moving trains, § 151 is unconstitutional as contravening the commerce clause of the Constitution of the United States, art. 1, § 8.

At the hearing of the motion the facts appeared in an affidavit by one Bowes, the defendant's trainmaster at Framingham. On Sunday, May 23, 1965, at approximately 9:45 A.M. a train consisting of thirty-three freight cars consumed approximately seven minutes in traversing the crossing. The cars were being transferred from the defendant's classification yard in Framingham. Some were going to an unloading yard on Hollis Street, where the defendant maintains a marshaling yard for the unloading of tri-level and bi-level rail rack cars. Others were being transferred from the classification yard to the manufacturing plant of General Motors Corporation near Hollis Street. The rail rack cars and the cars for General Motors had been shipped from Detroit and Flint, Michigan, and brought in over the defendant's rail line for ultimate delivery to General Motors and automobile dealers in the northeastern section of the United States. To reach the unloading yard and the General Motors plant, it was necessary to cross Waverly Street on the defendant's Milford Branch. In traversing Waverly Street, the defendant's operation was to have one of the members of the crew bring motor vehicles to a halt on Waverly Street and then flag the train over the crossing. The train proceeds over the street "at a fairly slow rate of speed."

The violation charged in this complaint is one of thirty which the Commonwealth, acting through complaints filed

by the chief of police of Framingham, has instituted in the District Court for violation of c. 160, § 151. Prior to the institution of these complaints, the number of cars to be placed in a train going to the unloading yard or to General Motors was determined by the number of cars received at a given time at the classification yard. This number would vary from five to fifty. As a result of the complaints, the superintendent of the defendant, by order dated June 9, 1965, restricted the number of cars "per movement" over Waverly Street to fifteen multi-level or twenty regular box cars. Compliance with the order has resulted in a much more inefficient and costlier operation.

Section 151 provides: "A railroad corporation, or receiver or assignee thereof, or its or his servant or agent, shall not wilfully or negligently obstruct or unnecessarily or unreasonably use or occupy a public way, or in any case obstruct, use or occupy it with cars or engines for more than five minutes at one time; and if a public way has been thus used or occupied with cars or engines, the railroad corporation, or receiver or assignee thereof, shall not again use or occupy it with the cars or engines of a freight train, until a sufficient time, not less than three minutes, has been allowed for the passage across the railroad of such travelers as were ready and waiting to cross when the former occupation ceased. A railroad corporation, receiver or assignee thereof, who violates this section, shall forfeit one hundred dollars."

1. We have no doubt that the statute is intended to apply to moving trains as well as stationary ones. There is no phraseology limiting its application, and we detect nothing convincing in the legislative history which suggests that the Legislature at any time had in mind any exception by implication.

The first enactment, St. 1854, c. 378, and its codification in Gen. Sts. (1860) c. 63, § 68, were aimed at imposing a fine if a railroad or its agents "wilfully or negligently obstruct any highway, town way, or public street, in this Commonwealth, by their engines, tenders, or cars." Statute 1871, c. 83, introduced the word "use" and the five minute limi-

tation.[1]   In St. 1874, c. 372, § 129, the act was amended into
approximately its present form.[2]   Then came the codifica-
tion by Pub. Sts. (1882) c. 112, § 169.   In St. 1895, c. 173,
receivers and assignees were included.

The point we are considering was conclusively set at rest
by Mr. Justice Knowlton in *Howard* v. *Union Freight R.R.*
156 Mass. 159, 160, where it was said: "The provisions of
the Pub. Sts. c. 112, §§ 169, 224, are not applicable to this
case.   The first of these sections relates to the use of streets
and highways by ordinary steam railroads at crossings, and
is intended to prevent too long delays of travellers on high-
ways at railroad crossings from the occupation of the high-
way by cars passing or standing over it."   This case is not
cited in either brief.   See *Commonwealth* v. *New York Cent.
& Hudson River R.R.* 202 Mass. 394, 398.

Two cases are cited to us where to avoid ruling that there
was an interference with interstate commerce in violation
of art. 1, § 8, an apprehension which we do not share under
the present statute, the pertinent ordinances were construed
as not applying to moving trains.   In *Kahn* v. *Southern Ry.*
202 Fed. 2d 875 (4th Cir.), which is distinguishable from
the case at bar, two ordinances were construed together,
one prohibiting obstruction of street crossings for more
than three minutes at a time, and another proscribing
speeds of more than four miles an hour across any street.

---

[1] The first section of c. 83 was, "No railroad corporation shall unnecessarily
or unreasonably use or occupy a highway; nor in any case with cars or en-
gines, for more than five minutes at one time."   The second section was,
"Whenever a railroad corporation has used or occupied a highway, with cars
or engines, no railroad corporation shall thereafter use or occupy the same,
with the cars or engines of a freight train, until a sufficient time, not exceed-
ing three minutes, has elapsed, to enable travellers who are ready and wait-
ing for that purpose to cross, on said highway, the tracks of said railroad
corporation."

[2] "No railroad corporation, nor its servants or agents, shall wilfully or
negligently obstruct, or unnecessarily or unreasonably use or occupy a high-
way, town way or street; nor in any case with cars or engines, for more than
five minutes at one time; and whenever a highway, town way or street has
been thus used or occupied with cars or engines, no railroad corporation shall
again use or occupy the same with the cars or engines of a freight train, until
a sufficient time, not less than three minutes, has allowed the passage across
the railroad of such travellers as were ready and waiting to cross when the
former occupation ceased.   For any violation of the provisions of this section
the corporation shall forfeit the sum of one hundred dollars."

In *Ocean View Improvement Corp.* v. *Norfolk & Western Ry.* 205 Va. 949, the ordinance forbade obstructing a street for eight minutes "by a locomotive, engine, car or train," and invited a narrow construction. In *Cincinnati* v. *Luckey,* 153 Ohio St. 247, the ordinance prohibited blocking a street crossing for more than ten minutes and was held invalid for unreasonableness because no allowance was made for contingencies beyond the control of the operators of the train and there was no provision as to whether the blocking resulted in a hindrance or inconvenience to anyone in lawful use of the highway.

2.    There is no violation of art. 1, § 8, of the Constitution of the United States.    "The interstate commerce clause did not withdraw from the states the power to legislate with respect to their local concerns, even though such legislation may indirectly and incidentally affect interstate commerce and persons engaged in it." *Boston & Maine R.R.* v. *Armburg,* 285 U. S. 234, 238. *Atlantic Coast Line R.R.* v. *Georgia,* 234 U. S. 280, 290–291. *California* v. *Thompson,* 313 U. S. 109, 115–116.    *Huron Portland Cement Co.* v. *Detroit,* 362 U. S. 440, 443–444.    *Head* v. *New Mexico Bd. of Examrs. in Optometry,* 374 U. S. 424, 428, 430.

Nothing in *Southern Pac. Co.* v. *Arizona ex rel. Sullivan,* 325 U. S. 761, persuades us to reverse the court below and to reach a different result.    In that case an Arizona statute made it unlawful to operate a passenger train of more than fourteen cars or a freight train of more than seventy cars. The majority opinion recognized that there remained a large area for State regulation: "There has thus been left to the states wide scope for the regulation of matters of local state concern, even though it in some measure affects the commerce, provided it does not materially restrict the free flow of commerce across state lines, or interfere with it in matters with respect to which uniformity of regulation is of predominant national concern" (p. 770).    It concluded, however, that the Arizona statute "materially impedes the movement of appellant's interstate trains through that state and interposes a substantial obstruction to the national policy proclaimed by Congress, to promote ade-

quate, economical and efficient railway transportation service. . . . Compliance with a state statute limiting train lengths requires interstate trains of a length lawful in other states to be broken up and reconstituted as they enter each state according as it may impose varying limitations upon train lengths'' (p. 773). The majority opinion by detailing the effect of the challenged legislation outlined a strong case of State interference: ''The record here shows that the enforcement of the Arizona statute results in freight trains being broken up and reformed at the California border and in New Mexico, some distance from the Arizona line. Frequently it is not feasible to operate a newly assembled train from the New Mexico yard nearest to Arizona, with the result that the Arizona limitation governs the flow of traffic as far east as El Paso, Texas. For similar reasons, the Arizona law often controls the length of passenger trains all the way from Los Angeles to El Paso'' (pp. 774–775).

It is a far different situation from the consequences of the Arizona statute which is presented by the Massachusetts legislation in the case at bar. The latter is not directed at interstate commerce. Its purpose is ''the safety of the public . . . and convenient use of its highways.'' See California v. Thompson, 313 U. S. 109, 116. There is no limitation of speed nor any direct restriction imposed on the length of trains. There is no confusing dislocation of interstate commerce over a distance of more than a thousand miles such as that from Los Angeles to El Paso. The Waverly Street crossing is on a branch, and not on a main line. The particular train at this crossing was composed of newly arrived individual cars put together by the defendant at a Framingham classification yard for brief movement to nearby unloading areas. There is nothing to show that such a train could not reasonably be moved over the crossing in five minutes. In short, there is presented a local problem without effect on national or interstate uniformity and in a field where uniformity is not necessary or desirable. This is not a case for voluntary abandonment of municipal regulation. This is a critical moment in the

State's right of control over highways at railroad cross-
ings. Rights surrendered now will not be reacquired.
Local authorities would be seriously crippled in their duty
to preserve the public safety and to keep their highways
free of obstructions which they could not control if they
should be deprived of the benefit of the reasonable protec-
tion of c. 160, § 151. Should this statute be struck down,
trains might occupy crossings indefinitely leaving the high-
ways in a continuing state of chaos.

*Exceptions overruled.*
*Appeal dismissed.*

SPALDING, J., dissenting. The obstruction on which this
conviction was based arose out of a *moving* train. The
pivotal question, as I see it, is whether § 151 of G. L. c. 160
applies to an obstruction caused by a moving train. In my
opinion it does not. I am mindful of the language of
Knowlton, J., in *Howard* v. *Union Freight R.R.* 156 Mass.
159, 160 (quoted in the majority opinion), that the statute
was designed to prevent obstructions by "passing or stand-
ing" cars. That language, I submit, was dictum. No
question was presented in that case as to whether § 151
applied to passing trains. But whether that language was
dictum or an actual holding, it should be reëxamined in the
light of subsequent developments in the law and changed
circumstances. See *Vigeant* v. *Postal Tel. Cable Co.* 260
Mass. 335, 342–344.

In *Southern Pac. Co.* v. *Arizona ex rel. Sullivan, Atty.
Gen.* 325 U. S. 761, it was held that even in the absence of
Federal regulation, a State could not limit the length of
trains moving in interstate commerce. If § 151 is con-
strued as applicable to moving trains it has the effect of
doing just that, although it does so indirectly rather than
directly. To comply with the statute as construed by the
court below, the defendant railroad has been obliged to
shorten materially the length of its trains and alter its
method of operations, and, as the majority opinion con-
cedes, this has resulted in a "much more inefficient and
costlier operation." Increased operating costs are of sub-

stantial importance at a time when the continued main-
tenance of rail service in the community is a matter of
grave public concern.

The majority opinion emphasizes the local aspects of the
particular operation to which the statute is here held ap-
plicable. It is hard to see how a clear line, susceptible of
practical administration, can be drawn between such local
operations and the movement of trains more obviously en-
gaged in interstate commerce; for example, trains passing
from one State, through this Commonwealth, to another
State. An attempt to do so could only lead to confusion
and uncertainty as to precisely what train movements are
governed by the statute. Accordingly, I feel constrained to
construe today's decision on the basis of its application to
all trains moving within the Commonwealth. So viewed,
the statute in my opinion violates the commerce clause of
the United States Constitution as interpreted in *Southern
Pac. Co.* v. *Arizona ex rel. Sullivan, Atty. Gen.* 325 U. S. 761.
If one State can regulate the length of trains (albeit indi-
rectly) as this statute does, other States can do likewise.
The disruption of interstate commerce which such legisla-
tion would accomplish was, I submit, the primary consider-
ation in the court's decision in the *Southern Pac.* case. See
325 U. S. 761, 774–775.

Faced with statutes or ordinances of a similar type, other
courts have construed them to apply only to standing trains.
If construed as applicable to moving trains, these statutes,
it is held, would collide with the principle laid down in the
*Southern Pac.* case. Two well considered opinions of this
sort are *Kahn* v. *Southern Ry.* 202 F. 2d 875 (4th Cir.); and
*Ocean View Improvement Corp.* v. *Norfolk & Western Ry.*
205 Va. 949. As was said in *Worcester County Natl. Bank*
v. *Commissioner of Banks,* 340 Mass. 695, 701, ''A statute
must be construed, if fairly possible, so as to avoid not only
the conclusion that it is unconstitutional but also grave
doubts upon that score.''

I am authorized to say that Mr. Justice Cutter joins in
this dissent.