310 So.2d 116 (1975)
CITY OF LAKE CHARLES, Plaintiff-Appellee,
v.
SOUTHERN PACIFIC TRANSPORTATION COMPANY et al., Defendants-Appellants.
No. 4862.
Court of Appeal of Louisiana, Third Circuit.
February 26, 1975.
Rehearing Denied April 15, 1975.
Writ Refused June 13, 1975.
*117 Chaffe, McCall, Phillips, Tolar & Sarpy by Harry McCall, Jr., New Orleans, and Raggio, Farrar, Cappel & Chozen by Thomas L. Raggio, Lake Charles, for defendants-appellants.
Peter A. Ciambotti, Lake Charles, for plaintiff-appellee.
Before FRUGÉ, CULPEPPER, and DOMENGEAUX, JJ.
DOMENGEAUX, Judge.
This is a suit for a permanent injunction filed by the City of Lake Charles against the defendantrailroad and two of its employees[1] to prevent further violation of a City Code ordinance prohibiting the obstruction or blocking of public streets within the city for a period in excess of five minutes. From a judgment in favor of the plaintiff, enjoining the defendants from violating the ordinance (the injunction being limited, however, to two specified streets Shattuck St. and Enterprise Blvd.), defendants have appealed to this court.
The facts leading up to this suit are as follows: The defendantSouthern Pacific Transportation Co. operates main tracks through, and a switching yard within, the city limits of Lake Charles. Its main tracks extend from East to West, through the city, connecting with a main line which *118 runs from New Orleans, Louisiana, to Houston, Texas, enroute to the West Coast.
Four freight trains are operated daily in each direction between New Orleans and Houston. Two of the trains are termed "run-through trains" which belong to another railroad, but are moved intact by Southern Pacific crewmen, although cars are sometimes added at various points including Lake Charles. One freight train also operates both ways between Houston and Lafayette five to seven days a week. In addition, a local freight between Beaumont and Lake Charles and one AMTRACK passenger train between New Orleans and Houston run six days a week.
These aforementioned tracks have grade level crossings at a number of North-South streets within the city. Among the most heavily traveled crossings are those streets in question, Enterprise Blvd. and Shattuck St., which are approximately five blocks apart. Enterprise Blvd. lies directly West of and runs parallel with Shattuck St. One street (Franklin) crosses the tracks in between the aforementioned streets. Looking to the West, only three streets within the city limits cross the tracks (the farthermost being Ryan Street which is 9 blocks from Enterprise Blvd.). To the East of Shattuck St. is located the railroad's switching yard, which extends a distance of 1½ to 2 miles. Two overpasses cross the yard, one at Interstate Highway 10 (approximately ½ mile East of Shattuck) and another at Louisiana Highway 171 (about 1 mile East of Shattuck).
Between 17,000 and 20,000 people live North of the Southern Pacific tracks, or approximately 25% of the population of Lake Charles.
All of the city's hospitals, police stations, and central fire stations are located South of the tracks. Only one "pumper" fire house (without a ladder truck at its disposal) is located to the North of the tracks. City transit service is also provided for those people traveling within the city, including regularly scheduled runs from North to South of the tracks and vice versa.
In November, 1970, the plaintiffcity adopted a new City Code which included Section 20-20[2] prohibiting the blocking of any public roads or streets in the city, by a railroad, in excess of five consecutive minutes. Another city ordinance also limits the maximum speed of railroads in the city limits to twenty miles per hour.
The record reflects that since the enactment of Section 20-20, the Southern Pacific Railroad has violated the provisions of the ordinance (almost daily), often blocking the tracks from Ryan to Shattuck Street (a fourteen block area) and thus causing relative inaccessibility to the area North of the tracks. When the aforementioned streets were obstructed, persons wanting or having to immediately cross the tracks had to detour to the aforementioned overpasses, either on Interstate Highway 10 or Highway 171, which meant traveling, depending upon location, from ½ to approximately 2½ miles, to reach the overpass. Testimony also indicates the tracks were blocked numerous occasions, anywhere from five to twenty minutes and as long as thirty or forty minutes at a time. In fact, defendants stipulated at trial to the numerous blockings as set out in plaintiff's original and supplemental petitions.[3]
Plaintiff also alleges that numerous complaints of blockages have in the past been *119 and are presently received by the mayor's office, city council, police department, etc. Testimony was presented to show that obstruction of the crossings caused people to be late for work and school, in addition to interrupting and interfering with the city bus schedule. Most important, there was evidence indicating that the obstructions presented serious problems to the Lake Charles Fire and Police Departments and for ambulance services attempting to reach patients and transport them to hospitals. The Fire Chief testified that his department had made its own studies to determine what special precautions had to be taken for fires North of the tracks (if blocked) and devised alternative (although longer and timlier) routes. The Police Chief also stated that excessive blocking impeded efficient operation of the police department North of the tracks because of difficulty in gaining immediate access to specific incidents of crime and having to use alternative routes. Ambulance service owners and an operator told of specific occasions of being blocked while transporting patients who were in critical condition and in need of immediate hospital care.
On appeal defendants cite two specifications of error in the district court judgment: (1) That the application of Section 20-20 of the Lake Charles City Code to the defendants constituted an unreasonable and unconstitutional burden on interstate commerce. (2) That the ordinance was invalid as an arbitrary and unreasonable exercise of the municipality's "police power".

UNREASONABLE BURDEN ON INTERSTATE COMMERCE?
At the outset we take note of a recent group of consolidated cases[4] (referred to and quoted from by the District Judge hearing this suit) tried in the 24th Judicial District Court, Parish of Jefferson, Gretna, Louisiana, involving similar facts and considering in depth the first of the abovementioned attacks (i. e. violation of Commerce ClauseU.S.C.A.Const. Art. 1, § 8, Cl. 3) on the constitutionality of an ordinance, very similar to the one herein. These recent cases arose out of criminal charges filed by the State in the First Parish Court for the Parish of Jefferson, Division "A", against various railroad companies (including the defendant herein, Southern Pacific Transportation Co.) alleging violations of two provisions in the Jefferson Parish Code, one of which prohibited the railroads' obstruction of a public way in excess of five minutes at any one time. The parish court found the defendantrailroads guilty of violating the blocking provision, assessing fines of $100.00 to each of them. An appeal was perfected to the aforementioned district court, Division "H", with Judge Thomas C. Wicker, Jr., presiding. After a trial on the merits, Judge Wicker affirmed the parish court ruling, upholding the constitutionality of the ordinance, and rendered (on April 2, 1973) a very thorough and considered written opinion (from which we later quote excerpts therefrom). Subsequently on May 29, 1973, the Louisiana Supreme Court denied writs[5] on all of the consolidated cases, with the comment, "No error of law". Thereafter, on November 5, 1973, the United States Supreme Court[6] dismissed appeals lodged on behalf of the defendantrailroads "for want of a substantial federal question".
As pointed out by the district judge in the abovementioned Jefferson Parish cases:
"Article 1, Section 8 of the U. S. Constitution provides that Congress shall have *120 the power to regulate commerce among the several states.
"Although the commerce clause conferred on the Federal Government power to regulate commerce, this does not exclude all state power of regulation. It has long been recognized that in the absence of conflicting regulation by Congress, there is reserved to the states, the power to make laws governing matters of local concern which nevertheless in some measure affect interstate commerce or even, to some extent, regulate it, provided these laws do not materially restrict the free flow of commerce across state lines. Simpson v. Shepard, 230 U.S. 352, 33 S.Ct. 729, 57 L.Ed. 1511 (1912); South Carolina State Highway Dept. v. Barnwell Bros., 303 U.S. 177, 58 S.Ct. 510, 82 L.Ed. 734 (1938); People of State of Calif. v. Thompson, 313 U.S. 109, 61 S.Ct. 930, 85 L.Ed. 1219 (1941); Parker v. Brown, 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943).
"As the Supreme Court observed in Huron Portland Cement Co. v. City of Detroit, 362 U.S. 440, 80 S.Ct. 813, 4 L.Ed. 852, 78 A.L.R.2d 1294 (1960):
`In determining whether the state has imposed an undue burden on interstate commerce, it must be borne in mind that the Constitution when conferring upon Congress the regulation of Commerce never intended to cut the states off from legislating on all subjects relating to the health, life and safety of their citizens, though the legislation might indirectly affect commerce of the country.' (Emphasis supplied.)
"See Brotherhood of Locomotive Firemen and Enginemen, et al v. Chicago, Rock Island and Pacific R. R. Co., 393 U. S. 129, 89 S.Ct. 323, 21 L.Ed.2d 289 (1968); Terminal R. Ass'n. of St. Louis v. Brotherhood of Railroad Trainmen, 318 U.S. 1, 63 S.Ct. 420, 87 L.Ed. 571 (1943). Boston & M. R. R. v. Armburg, 285 U.S. 234, 52 S.Ct. 336, 76 L.Ed. 729 (1932)."
Applying the foregoing legal principles to the case at hand, it is undisputed that the defendantrailroad is engaged almost exclusively in interstate commerce traffic. Likewise there is no doubt but that the ordinance in question affects interstate commerce since it applies to the defendant. Congress has not, however, undertaken to regulate the acts which defendants were enjoined from committing, i. e. obstructing crossings. In our opinion such regulations of railroad crossings within a city are matters of local concern beyond the practical effective breach of Congressional action, but which can be adequately dealt with by state authorities. The question, threfore, is whether the ordinance unnecessarily and unreasonably obstructs the free flow of commerce across state lines in contravention of the Federal Commerce Clause of the United States Constitution.
In this regard Southern Pacific alleges essentially that application of the five minute blocking ordinance creates an unconstitutional burden on interstate commerce since it would force the carrier to limit the length of its trains to eighty cars. It is further contended that the main effect of cutting down the size of the trains would mean doubling the number of trains running between New Orleans and Houston, which would result in schedule delays, increased exposure to accidents, and severe financial losses due to an additional yearly expense of nearly four million dollars. This argument is based upon the U. S. Supreme Court decision of Southern Pacific Co. v. Arizona, 325 U.S. 761, 65 S.Ct. 1515, 89 L.Ed. 1915 (1945).
In Arizona, the state had enacted a statute making it unlawful to operate within the state a railroad train of more than 14 passenger or 70 freight cars. The statute was attacked as placing an unconstitutional burden on interstate commerce. The Arizona Supreme Court sustained the Act as a safety measure (within the State's exercise of its police power) designed to reduce the number of accidents attributed to the operation *121 of trains in excess of this length. The High Court, in nullifying the statute found that it was standard practice throughout the United States (with the exception of Arizona) to run trains in excess of the 14 and 70 car limit and that the statute thus necessitated the breakup of reasonably longer trains before entering and after leaving the regulatory state. The Court ruled that this fact, coupled with the increased number of trains, required, additional annual costs, and the resulting impediment to the railroad's efficient operation, created a serious obstruction to and burden on the free flow of interstate commerce, i. e. practical effect of the local regulation being to control interstate railroad operations beyond state boundaries. In so ruling, however, the Court found as a matter of fact that the train length limitation increased, rather than diminished the number of accidents within the state. Thus, the very basis for which the statute was enacted, i. e. safety measure, lacked substance.
We opine that the Arizona case is clearly distinguishable from the facts presented herein. In Arizona, the court was reviewing a statute limiting the number of cars a train could pull within the state. This statute seriously interfered with the operation of interstate commerce beyond the state's boundaries due to the fact that trains outside the state coming in had to conform with the strict car limitation. Additionally the court held in effect that the ordinance actually bore no reasonable relationship to the health, safety and well-being of the people of the state.
In the case at hand we are not dealing with a car limitation statute. The defendants, however, argue that application of the five minute obstruction ordinance, coupled with several other conditions present, effectively operates as a limit on the train's length.
First, it is alleged that the aforementioned city ordinance which limits the speed of the trains to 20 miles per hour prevents adherence to the obstruction ordinance in question and therefore long trains can simply not comply.
The trial judge reviewed the foregoing argument, concluded that it lacked merit, and found as a matter of fact that the speed limit of 20 miles per hour was not proven to have any limiting effect on the length of defendant's trains. We fully agree with his conclusion.
The district court noted that the length of the Southern Pacific trains running through Lake Charles (as evidenced in the record) averages between 100 and 125 cars. The average length per car is 50 feet. The longest train in the record was 171 cars, the next longest train being 151 cars in length. A train of 171 cars, at an average length of 50 feet per car, equals 8,550 feet. A through train running at 20 miles per hour will travel 8,800 feet in five minutes. Thus, even the longest train in the record, 171 cars, (a length of which defendant's trains rarely reach) would completely travel over any crossing within the five minute period as set out in the ordinance.
As a result defendants have failed to show any connection between the two municipal ordinances, acting in concert, insofar as placing a burden on the railroad and causing it to limit the length of its trains. As pointed out by the district court, the fact is that "the blocking of the intersection sought to be enjoined is not caused by through trains moving at 20 miles per hour, but rather by the trains which move slowly through town or by the switching operations of defendants".
In this same regard, defendants' second contention is that the five minute blocking ordinance, combined with Southern Pacific's inability to operate its trains in excess of ten miles per hour over the crossings and still stop at the Lake Charles yard, in effect limits the length of the trains and brings it within the ambit of Arizona. We likewise cannot adhere to this argument.
It may well be that due to defendantrailroad's self-imposed (whether by *122 necessity due to switching, etc. or otherwise) 10 mile per hour speed limit, its longer trains are unable to clear the crossings in question within the 5 minute limitation. Despite this possibility, however, this is not the type of state interference as envisioned under the Interstate Commerce Clause, or in Arizona. To reiterate, neither the municipality's 20 mile per hour speed limit, nor the blocking ordinance, has been shown to limit the length of the Southern Pacific trains. The 10 mile per hour speed limit is under the control of the railroad alone and any adverse effects it might have cannot be attributed to the city or its blocking ordinance.
In addition, we opine a further distinction with Arizona is that regulations of city crossings, in regard to blocking limitations, are local in character and effect and their impact on interstate commerce has not been shown by defendants to be such that would materially restrict the free flow of said commerce across state lines.
Further, unlike Arizona, we also find present herein a reasonable basis for enactment of the ordinance, i. e. to protect the health, safety, and welfare of the citizens of Lake Charles from the potential danger of being essentially "cut off" from emergency (police, fire, ambulance) services. See: Southern Pacific Transportation Co. v. Louisiana Public Service Commission, 290 So.2d 816 (La.1974).
Defendants also diligently attempt to distinguish the Jefferson Parish cases on a factual basis from the situation presented herein. Insofar as the applicability of the aforementioned constitutional principles, we find no real distinctions. All of the cases involved blockage of crossings (by an interstate carrier) in excess of the time permitted by a local ordinance, which in effect interfered with the ingress and egress of local population, emergency vehicles, and bus lines to an area of substantial size and populace. The railroads all contended that an unconstitutional burden was placed on interstate commerce because the size of their trains had to be cut down, causing delay in schedules and increased costs. In the Jefferson Parish cases the court found no undue interference with interstate commerce.
Likewise, for the foregoing reasons it cannot be said that the ordinance in question herein is invalid as an unconstitutional and unreasonable interference with interstate commerce.[7]

ARBITRARY AND UNREASONABLE EXERCISE OF POLICE POWER?
Defendants also contend that the ordinance constitutes an arbitrary and unreasonable exercise of the city's "police power" due to the fact that the five minute limitation is unqualified and absolute, with no exception made for blockings over which defendantrailroad has no control (such as accidents or mechanical failures) and irrespective of whether there is any resulting inconvenience to the public.
Defendants' allegation is based essentially on a 1950 Ohio case, City of Cincinnati v. Luckey, 153 Ohio St. 247, 91 N.E.2d 477 (1950) which held invalid as an arbitrary and unreasonable exercise of police power a city ordinance which made it "unlawful for any railroad company to operate its locomotives, cars or trains of cars in such a manner as to block a street crossing for a period of more than ten minutes."
We choose, however, not to follow the Ohio case and in light of the later referred to jurisprudence of this state, conclude that the ordinance herein is valid as a legitimate exercise of the city's police power.
In respect to the question of legitimacy of the exercise of a city's "police *123 power", the jurisprudence thereon was adequately summarized in Hi-Lo Oil Company v. City of Crowley, 274 So.2d 757, 762 (La.App. 3rd Cir. 1973), writ refused 277 So.2d 673 (La.1973) as follows:
"In determining the constitutionality of this ordinance, we recognize the established rule of law that a city ordinance, like an act of the legislature, is presumed to be constitutional, and that the party who attacks it has the burden of establishing by clear and cogent evidence that the ordinance is unconstitutional. This rule is strictly observed in cases involving ordinances enacted in the exercise of the city's police power. Everhardt v. City of New Orleans, 253 La. 285, 217 So.2d 400 (1969); Hunter v. City of Shreveport, 216 So.2d 140 (La. App. 2 Cir. 1968); Parish Council, Etc. v. Louisiana Highway, Etc., 131 So.2d 272 (La.App. 1 Cir. 1961); City of Crowley Firemen v. City of Crowley, 264 So. 2d 368 (La.App. 3 Cir. 1972).
The ordinance should be upheld if any set of facts can be conceived from which it could be concluded that there is a reasonable relationship between its provisions and the public health, safety, morals or general welfare. Everhardt v. City of New Orleans, supra. In order to justify a holding that the legislative action is arbitrary, unreasonable or unnecessary, it must be shown that there was no room for a reasonable difference of opinion, and that there was no substantial evidence upon which the legislative action could have been justified. Torrance v. Caddo Parish Police Jury, 119 So.2d 617 (La.App. 2 Cir. 1960); Archer v. City of Shreveport, 85 So.2d 337 (La. App. 2 Cir. 1956).
The court should not set up its judgment against that of the city authorities as to the wisdom of the method adopted to accomplish a legitimate object, unless the method employed by the city is clearly unreasonable. The method provided in the ordinance need not necessarily be the best. The courts thus will not invalidate an ordinance, which has been duly enacted and is within the municipal competency, unless its invalidity appears on its face or is established by admissible extrinsic evidence. Gibson v. City of Baton Rouge, 161 La. 637, 109 So. 339 (1926); Hunter v. City of Shreveport, supra; City of Shreveport v. Conrad, 212 La. 737, 33 So.2d 503 (1947).
In order that a city ordinance may be sustained as the legitimate exercise of the city's police power, however, the legislation must have for its object the prevention of some offense or manifest evil, or the preservation of the public health, safety, morals or general welfare. The exercise by the city of its police power must have a substantial basis if it is to be upheld. The purported exercise of that power cannot be made a mere pretext for legislation that does not fall within it. There must be some substantial connection between the purpose of the regulation and the provisions of it, and the provisions must in some appropriate manner be designed for and tend toward the accomplishment of the legitimate objects for which the power is exercised. City of New Orleans v. Southern Auto Wreckers, 193 La. 895, 192 So. 523 (1939); Schwegmann Bros. v. Louisiana Board, Etc., 216 La. 148, 43 So.2d 248 (1949); City of Lake Charles v. Hasha, 238 La. 636, 116 So.2d 277 (1959); Arkansas Louisiana Gas Company v. Louisiana Department of Highways, 104 So.2d 204 (La.App. 2 Cir. 1958).
The test of whether the ordinance is a valid exercise of the police power of the city in the constitutional sense depends on whether, under all of the existing circumstances, the regulation is reasonable, and whether it is designed to accomplish a purpose properly falling within the scope of the city's police power. Reynolds v. Louisiana Board of Alcoholic Beverage Control, 249 La. 127, 185 So.2d 794 (1965); State v. Birdsell, 235 La. 396, 104 So.2d 148 (1958); City of Baton *124 Rouge v. Rebowe, 226 La. 186, 75 So.2d 239 (1954)."
There is no dispute herein as to whether the regulation of railroad crossings within the city of Lake Charles falls within the broad ambit of the municipality's governmental "police power". Because of the potential danger to the health, safety, and welfare of the citizens living North of the railroad tracks in question (due to blocking of crossings for excessive time periods) we feel that the obstructions are subject to reasonable regulations by the city under their "police powers". As aforementioned, the purpose of the five minute regulation herein was to protect the health and safety of the residents essentially cut off from emergency services, in addition to major interference with movement of traffic, bus lines, etc. We find a substantial basis for such a regulation, a definite connection between the purpose of the ordinance and its provisions, and that it was calculated to accomplish that purpose. Even assuming arguendo that this might impose a greater economic burden on the defendants than existed prior to passage of the ordinance, the city is not barred from exercising its police power for legitimate purposes simply because of these alleged increased economic burdens. Hi-Lo Oil Co. v. City of Crowley, supra. After weighing the nature and importance of the local interest against the minimal interference it creates with Interstate Commerce, we conclude that the ordinance is both a reasonable and necessary safety regulation.
The fact that the ordinance makes no exceptions for obstructions caused by circumstances beyond the railroad's control does not in our opinion make the ordinance invalid. We feel recognition of exceptions is implicit in the statute wherein it provides no railroad "shall permit" blockages. This indicates if it is beyond the railroad's control, such as an accident or mechanical failure, then it would be a circumstance not "permitted" and therefore not covered thereunder.[8]
Likewise, we feel it is implicit in the statute that the intent of the redactors was to prevent blockings which would interfere with the flow of traffic, inconvenience the public, and impede fire, police, and ambulance service to the citizens of Lake Charles. Although these reasons are not specifically set out in the ordinance we do not feel it is invalid for that reason.
Accordingly, we do not find the city blocking ordinance so unreasonably broad and absolute as to be an arbitrary and unreasonable exercise of the city's "police power".
For the above and foregoing reasons the judgment of the trial court is affirmed at defendants-appellants' costs.
Affirmed.
NOTES
[1] E. F. WinterrowdArea Superintendent, C. N. McMurreyLocal Trainmaster, and their successors in office.
[2] Sec. 20-20. Railroad trains blocking streets Maximum time.

No railroad company, conductor, engineer or other person in charge of operating, switching or moving railroad cars, engines or trains in the city shall permit such railroad cars, engines or trains to block any public road or street of the city which intersects railroad tracks for a period of time in excess of five (5) consecutive minutes. (Code 1956, § 20-3).
[3] These included seven blockings on January 25, 1972, which occurred between 7:26 A. M. and 8:37 A. M. for total blocking time of 56 minutes and five separate incidents occurring between 7:06 A. M. and 8:55 A. M. on January 26, 1972, for a total blocking time of 33 minutes.
[4] State of Louisiana v. New Orleans Terminal Company; State of Louisiana v. The Alabama Great Southern Railroad Company; State of Louisiana v. Southern Pacific Transportation Company; State of Louisiana v. Illinois Central Railroad Co.; State of Louisiana v. Texas Pacific-Missouri Pacific Terminal Railroad of New Orleans; State of Louisiana v. Louisiana & Arkansas Railway Company.
[5] 277 So.2d 678-9 (La.1973).
[6] 414 U.S. 230, 94 S.Ct. 343-4, 38 L.Ed.2d 230 (1973).
[7] In accord with this holding are a number of decisions from other states including: (a) KentuckyCity of Harrodsburg v. Southern Railway Company, 455 S.W.2d 576 (1969), appeal dismissed 90 S.Ct. 2198; (b) MassachusettsCommonwealth v. New York Central Railroad Co., 350 Mass. 724, 216 N.E.2d 870 (1966).
[8] In accord is Kentucky Appeals case of Louisville & Nashville R. Co. v. Commonwealth, 488 S.W.2d 329 (1972).