THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* INDIANA HARBOR BELT RAILROAD COMPANY, Defendant-Appellant.—
(BALTIMORE AND OHIO RAILROAD COMPANY *et al., Amici Curiae.*)

First District (2nd Division)    Nos. 80-2237, 80-2534 cons.

Opinion filed December 1, 1981.

Anna M. Kelly, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Ruth S. Geis, and James Klein, Assistant State's Attorneys, of counsel), for the People.

Lewis, Overbeck & Furman, of Chicago (James R. Gannon, Douglas A. Lindsay, and Paul V. Esposito, of counsel), for *amici curiae*.

JUSTICE PERLIN delivered the opinion of the court:

This is a consolidated appeal of two cases involving a total of five instances in which the defendant, Indiana Harbor Belt Railroad Company (defendant), was charged with obstructing public travel at a railroad highway grade crossing for a period in excess of 10 minutes in violation of section 14 of "An Act in relation to fencing and operating railroads" (Ill. Rev. Stat. 1979, ch. 114, par. 70). A bench trial was held in each of the five cases. In each case the railroad was found guilty and a fine was assessed. The defendant appeals in each case from the judgment of the circuit court.

The following issues are presented for review: (1) whether by failing to file any post-trial motions, the defendant has waived all errors on appeal; (2) whether a moving train which obstructs public travel at a railroad highway grade crossing for a period in excess of ten minutes violates section 14; and (3) whether an interpretation of section 14 to include "moving trains" renders the statute unconstitutional as an unreasonable burden on interstate commerce.

For the reasons set forth herein, we affirm the decision of the circuit court in each of the cases involved in this consolidated appeal.

The facts pertinent to this appeal are undisputed. On each of five occasions a patrolman for the Village of Dolton, Illinois, observed a moving train owned by defendant obstructing traffic at a railroad highway grade crossing, located in Dolton, for a period in excess of 10 minutes. At the bench trial of each of the violations with which the defendant was charged, counsel for defendant argued that "a train moving through a grade crossing without stopping cannot be in violation of section 70 [section 14]."

The trial court, in finding defendant guilty, ruled that the statute in question must be construed to include moving trains which obstruct public travel for more than 10 minutes.

Defendant did not file any post-trial motions, but it appeals in each of the five cases from the judgment of the trial court.

I

The first issue presented for review is whether the railroad by failing to file any post-trial motions has waived all errors on appeal.

The underlying premise of the waiver rule is that the trial court be given an opportunity to correct any alleged errors. (*People v. Lain* (1980), 80 Ill. App. 3d 1136, 1137, 400 N.E.2d 1033.) It has been generally held,

however, that in a bench trial a post-trial motion is not necessary to preserve for review claims of error if such errors were in some manner brought to the attention of the trial court. See *People v. Eatherly* (1979), 78 Ill. App. 3d 777, 780, 397 N.E.2d 533.

■■ In the case at bar, defendant maintains that the only error was the interpretation of section 14 by the trial judge. The record indicates that in each of the five bench trials, defendant argued that the statute should be construed not to include "moving" trains. Thus, the trial court was made aware of defendant's claim of error, and we shall consider the facts underlying defendant's argument.

## II

■■ The second issue presented is whether a moving train which obstructs public travel at a railroad highway grade crossing for a period in excess of 10 minutes violates section 14 of "An Act in relation to fencing and operating railroads." Section 14 provides in pertinent part:

"It is unlawful for a railroad corporation to permit any train, railroad car or engine to obstruct public travel at a railroad-highway grade crossing for a period in excess of 10 minutes, except where such train, railroad car or engine cannot be moved by reason or circumstances over which the railroad corporation has no control." Ill. Rev. Stat. 1979, ch. 114, par. 70.

To determine whether a "moving" train can "obstruct public travel," we must consider the meaning of the word "obstruct." Defendant contends that in using the word "obstruct," the legislature contemplated a stationary object only. Defendant based its contention, in part, on the fact that the legislature also employed the phrase "except where such train * * * *cannot be moved*" (emphasis added), which defendant believes indicates that only nonmoving trains fell within the scope of the statute. We disagree.

■■■ Statutory language must be given its plain and ordinary meaning, " ' " * * * and if the legislative intent can be ascertained therefrom it must prevail and will be given effect without resorting to other aids for construction. [Citations.] There is no rule of construction which authorizes a court to declare that the legislature did not mean what the plain language of the statute imports." ' " *People v. Moore* (1978), 69 Ill. 2d 520, 523, 372 N.E.2d 666.

Webster's Third New International Dictionary (1976), defines the word "obstruct" as follows:

"1. to block up: stop or close up; * * *

2. to be or come in the way of: hinder from passing, action or operation; * * *

3: cut off from sight: shut out * * *."

Applying this definition, and noting that the language of the statute contains no other terms that would limit the prohibited conduct to standing trains, we think it clear that a moving train could "block up" a railroad highway grade crossing, and "hinder" public travel across the intersection.

This conclusion would appear to be dispositive of this issue. However, since the construction of section 14 is a matter of first impression in Illinois, we shall address the several arguments offered by defendant.

Defendant argues that since violation of section 14 may result in the imposition of a fine, the statute is penal in nature and should therefore be strictly construed. (See *Cedar Park Cemetery Association, Inc. v. Cooper* (1951), 408 Ill. 79, 96 N.E.2d 482.) Defendant maintains that the trial court improperly extended the scope of section 14 to include moving trains. We find no merit in such argument, as we have already determined that given its plain and ordinary meaning, section 14 includes moving as well as standing trains.

Defendant further argues that from 1874 until 1973 the statute applied only to standing trains, and therefore, the legislature, in its 1973 amendment, could not have intended to change its long-established policy. The statute in force prior to the 1973 amendment provided:

"No railroad corporation shall obstruct any public highway by *stopping* any train upon, or by leaving any car or locomotive engine *standing* on its track where the same intersects or crosses such public highways, except for the purpose of receiving or discharging passengers or freight * * * and in no case to exceed 10 minutes for each train, car or locomotive engine." (Emphasis added.) Ill. Rev. Stat. 1971, ch. 114, par. 70.

Defendant invites this court to speculate that since the prior version of the statute applied only to "standing" trains, and the current version of the statute contains no specific reference to "moving" trains, the legislature intended to exclude moving trains from the scope of statutorily proscribed conduct. Under defendant's theory, the statute presently in effect would be limited to standing trains, and would merely echo, albeit in other words, the proscriptions of the 1971 version.

■■ The normal presumption is that an amendment to a statute is intended to change the law as it formerly existed, rather than to reaffirm it. (*Saltiel v. Olsen* (1979), 77 Ill. 2d 23, 394 N.E.2d 1197; *McLaughlin v. People* (1949), 403 Ill. 493, 501, 87 N.E.2d 637; 1A Sutherland, Statutes and Statutory Construction §22.20 (4th ed. 1972).) An amendment of an unambiguous statute indicates a purpose to change the law, and the Illinois Supreme Court has held that a statutory amendment is an appropriate source of discerning legislative intent. *O'Connor v. A & P Enterprises* (1980), 81 Ill. 2d 260, 408 N.E.2d 204.

Although the statute could have been more clearly drawn, we believe its intent and operation are discernible.[1] It seems apparent that when the legislature amended section 14 to exclude specific references to "standing" trains, it intended the statute to include all trains, whether standing or moving, that may block public travel across a railroad highway grade crossing. We conclude that the trial court did not err in ruling that defendant's moving train violated section 14.

### III

The final issue presented is whether an interpretation of section 14 to include moving trains renders the statute unconstitutional as an unreasonable burden on interstate commerce.

■■ Article 1, section 8 of the United States Constitution (the commerce clause) empowers Congress to regulate interstate commerce. It has long been recognized, however, that in the absence of conflicting legislation by Congress, there is a residuum of power in the States to enact laws governing matters of local concern which in some measure affect, and even to some extent regulate, interstate commerce. *Southern Pacific Co. v. Arizona* (1945), 325 U.S. 761, 767, 89 L. Ed. 1915, 1923, 65 S. Ct. 1515.

It is generally held that it is within a State's authority to regulate matters of local concern where the incentive to deal with these matters nationally is slight and where the State's regulation on such matters does not seriously interfere with the operation of interstate commerce. (*Southern Pacific Co. v. Arizona* (1945), 325 U.S. 761, 767, 89 L. Ed. 1915, 1923, 65 S. Ct. 1515.) Regulations which are designed by a State to further local health and safety, for example, are most likely to withstand constitutional attack. See *Raymond Motor Transportation, Inc. v. Rice* (1978), 434 U.S. 429, 54 L. Ed. 2d 664, 98 S. Ct. 787; *Railway Express Agency, Inc. v. New York* (1949), 336 U.S. 106, 93 L. Ed. 533, 69 S. Ct. 463.

■■ Those who would challenge a State's bona fide safety regulations

---

[1] The circumstances surrounding the enactment of an amendment should be considered. In the instant case, however, there is a dearth of comment concerning the contested provision. There is no record of any comment in the Illinois House of Representatives, and the following comment by Senator Walker is the only one of record to be made on the floor of the Senate:

> "HB 486 [enacted as Section 14] is a recommendation of the joint House Study Commission of the 76th General Assembly. The bill is supported by the Illinois Rail-Road Association, the United Transportation Union, and the Brotherhood of Locomotive Engineers. It is the result of five years of effort.

> It provides that no railroad shall block a railroad highway grade crossing except where the train cannot be moved by circumstances over which it has no control."

The bill was passed on June 11, 1973, by a vote of 30 to 4. Transcript of Senate meeting of June 11, 1973, page 49, line 25.

must overcome a "strong presumption of validity." (*Bibb v. Navajo Freight Lines, Inc.* (1959), 359 U.S. 520, 524, 3 L. Ed. 2d 1003, 1007, 79 S. Ct. 962, 965.) However, regulations designed by a State to promote the public health or safety which further such purpose only *marginally*, and interfere with commerce *substantially*, will be held invalid under the commerce clause. (See *Kassel v. Consolidated Freightways Corp.* (1981), 450 U.S. 662, 67 L. Ed. 2d 580, 101 S. Ct. 1309.) Thus, in determining the validity of a State regulation under the commerce clause, a court must engage in a "sensitive consideration of the weight and nature of the state regulatory concern in light of the extent of the burden imposed on the course of interstate commerce." *Raymond Motor Transportation, Inc. v. Rice* (1978), 434 U.S. 429, 441, 54 L. Ed. 2d 664, 675, 98 S. Ct. 787, 794; accord, *Pike v. Bruce Church, Inc.* (1970), 397 U.S. 137, 142, 25 L. Ed. 2d 174, 178, 90 S. Ct. 844, 847.

In the instant case, we must balance what appears to be the purpose of section 14, *i.e.*, to safeguard the health and welfare of the people of Illinois, against any burden that the statute may impose on the free flow of interstate commerce.

Defendant argues essentially that the effect of section 14 is to unreasonably restrict the flow of interstate commerce. Defendant alleges that if section 14 is construed to include moving trains, the carrier will be forced to limit the length of its trains in order to traverse a railroad crossing within a 10-minute period. Defendant further contends that if it must shorten the length of its trains, it must increase the number of trains running, which in turn would allegedly result in schedule delays, increased costs, and increased exposure to accidents. This argument appears to be based on the United States Supreme Court's decision in *Southern Pacific Co. v. Arizona* (1978), 325 U.S. 761, 89 L. Ed. 2d 1915, 65 S. Ct. 1515.

In *Southern Pacific Co.*, the State of Arizona had enacted a statute making it unlawful to operate within that State a train made up of more than 14 passenger or 70 freight cars. The Arizona Supreme Court sustained the act as a safety measure (within the State's exercise of police power) designed to reduce the number of accidents attributed to trains in excess of the prescribed lengths. The United States Supreme Court in nullifying the statute found that since it was general practice throughout the United States to run trains in excess of the 14- and 70- car limit, the Arizona statute thus necessitated the breakup of reasonably longer trains before entering and after leaving Arizona. Further, the reduction in train lengths resulted in the operation of a greater number of trains which, in turn, burdened the railroads with increased costs. Moreover, the court found as a matter of fact that the operation of a greater number of trains increased the number of accidents within the State; thus, the very purpose for which the statute was enacted, *i.e.*, safety, was not achieved. The

court ruled that the statute was an unreasonable burden on interstate commerce in that the State's interest was outweighed by the interest of the nation in an economical and efficient railway transportation service.

The *Southern Pacific Co.* case is clearly distinguishable from the facts presented herein. We are not dealing with a train-length limitation statute, although the defendant argues that in application, section 14 in fact operates as an indirect limit on train length.

Defendant asserts that Federal legislation limits freight train speeds on Class I track to 10 miles per hour, and therefore, in order to traverse a railroad crossing within the 10-minute period, a train's length necessarily will have to be limited. By way of example, defendant notes that at a speed of 10 miles per hour, a train longer that 133 66-foot cars could not cross a railroad highway intersection in 10 minutes.[2] Defendant maintains that slower speeds will be dictated by circumstances including switching, weather condition and necessary maintenance.

In further support of its contention that section 14 invalidly serves as an indirect limitation on train length, defendant cites *Kahn v. Southern Ry. Co.* (4th Cir. 1953), 202 F.2d 875. In *Kahn*, the court construed, as applying only to standing trains, an ordinance which prohibited the obstruction of a railroad highway intersection for more than *three* minutes. The court opined that if the ordinance was construed to include moving trains and was taken in conjunction with another ordinance which limited train speeds within city limits to *four miles per hour*, the two ordinances together would operate to limit unreasonably the length of interstate trains traveling through the city, and would therefore be unconstitutional under the *Southern Pacific Co.* decision.

Unlike *Kahn*, the statute in the instant case imposes no speed restriction, and provides the train with a *10-minute period* in which to traverse a railroad highway grade crossing. Moreover, an exception is made for circumstances beyond the control of the railroad corporation which impede a train from crossing within the prescribed time limits. This regulation does not appear to be the type of State interference with interstate commerce envisioned by the courts in *Southern Pacific Co.* and *Kahn*.

We note a further distinction between the statute invalidated in *Southern Pacific* and the statute involved in the case at bar: here this is a

---

[2] In the brief submitted by *amicus curiae*, there is reprinted the 1978 statement of James E. Martin, vice president of operations and maintenance, Association of American Railroads, before the Congressional Subcommittee on Transportation and Commerce of the Committee on Interstate and Foreign Commerce. This statement was offered in opposition to a legislative proposal to limit train lengths to 4,300 feet, exclusive of the caboose. We note that Mr. Martin stated that the proposed legislation would limit trains to approximately 75 cars. If, as defendant claims, in a 10-minute period, at a speed of 10 miles per hour, a train of 133 66-foot cars can traverse a railroad crossing, section 14 would permit almost an 80-percent increase in train length over the proposed Federal limitation.

reasonable basis for the enactment of section 14, *i.e.*, to protect the health, safety and welfare of the citizens of this State from the danger of being essentially "cut off" from emergency police, fire and ambulance services. (Compare *Commonwealth v. New York Central R.R. Co.* (1966), 350 Mass. 724, 216 N.E.2d 870; *City of Lake Charles v. Southern Pacific Transportation Co.*(La. App. 1975), 310 S. 2d 116.) Trains blocking main thoroughfares for extended periods of time may create very serious safety problems, as well as obstruct the flow of interstate highway traffic.

In *Commonwealth v. New York Central R.R. Co.*, a statute similar to that *sub judice* was upheld and construed to prohibit moving as well as stationary trains from obstructing railroad crossings for more than five minutes. The court held that "there is presented a local problem without effect on national or interstate uniformity and in a field where uniformity is not necessary or desirable. * * * This is a critical moment in the State's right of control over highways at railroad crossings. Rights surrendered now will not be reacquired. * * * Should this statute be struck down, trains might occupy crossings indefinitely, leaving the highways in a continuing state of chaos." 350 Mass. 724, 729-30, 216 N.E.2d 870, 873.

Such rationale applies also to the statute in question herein. Although section 14 may impose some burdens on the railroad corporations, these burdens must be weighed against a significant countervailing safety interest. We opine that the impact of section 14 on interstate commerce has not been shown by defendant to be such that would materially restrict the free flow of commerce across state lines. Thus, in the balance, the scales lean heavily on the side of the State's right to promote the health and safety of its citizens.

■■ Accordingly, we conclude that section 14 construed to prohibit moving as well as standing trains from obstructing a railroad highway grade crossing for a period in excess of 10 minutes, does not constitute an unconstitutional and unreasonable interference with interstate commerce. The orders of the trial court are affirmed.

Affirmed.

HARTMAN, P. J., and STAMOS, J., concur.