THE PEOPLE *ex rel.* THE VILLAGE OF McCOOK, Plaintiff-Appellant, v. INDIANA HARBOR BELT RAILROAD COMPANY, Defendant-Appellee.

First District (3rd Division)    No. 1—91—3684

Opinion filed November 10, 1993.

Louis F. Cainkar, Ltd., of Chicago, for appellant.

Richard A. Hobbs, of Crete, for appellee.

PRESIDING JUSTICE TULLY delivered the opinion of the court:
Plaintiff, the Village of McCook (the Village), filed this action in the circuit court of Cook County against defendant, Indiana Harbor Belt Railroad Company, alleging violations of section 18c—7402(b) of the Illinois Vehicle Code (section 18c—7402(b)) (Ill. Rev. Stat. 1989, ch. 95½, par. 18c—7402(b) (now 625 ILCS 5/18c—7402(b) (West 1992))) and section 10—1—1A of the Municipal Code of the Village of McCook, Illinois (section 10—1—1A) (McCook, Ill., Municipal Code § 10—1—1A (1990)). After the Village presented its case, defendant filed a motion for a directed verdict which the trial court granted. It is from the trial court's granting of defendant's motion of a

directed verdict that the Village appeals to this court pursuant to Supreme Court Rule 301 (134 Ill. 2d R. 301).

For the reasons which follow, we reverse and remand.

## FACTUAL BACKGROUND

The facts pertinent to this appeal are undisputed. At approximately 9:45 p.m. on October 4, 1990, while on a routine patrol, Lt. Anthony Yuretich of the McCook police department observed a westbound train owned by defendant stopped east of the highway grade crossing at 47th Street and East Avenue in the Village of McCook. The tracks upon which the train was stopped run in a diagonal direction across both 47th Street and East Avenue. At that time, no other trains were in the vicinity, the flashing light signals were activated and the grade crossing gates were lowered. However, the train itself did not physically block either grade crossing; rather, it was the train's having been stopped upon a sensor device that activated the crossing signals and gates to be activated. Consequently, the public was unable to traverse the grade crossings.

Yuretich completed his patrol and returned to the vicinity of 47th Street and East Avenue at about 10 p.m. Thereupon, he discovered that the train had not been moved and that traffic was being blocked by the lowered crossing gates. At approximately 10:17 p.m., Yuretich reported the blockage of public travel at the grade crossings to the McCook police department's radio control operator and requested that defendant be notified of the obstruction. Consequently, radio control operators Joanne Cappaccio and Frank Batura made repeated attempts to contact defendant by telephone; however, defendant's telephone line remained busy until roughly 12:30 a.m. on October 5, 1990. It was not until that time that Batura was able to advise defendant of the situation.

At approximately 3:15 a.m., a crew from defendant arrived at the scene and moved the train backwards or eastbound 30 feet which deactivated the flashing signals and caused the crossing gates to rise. Thus, it was necessary for Yuretich to remain at the scene from approximately 10 p.m. on October 5, 1990, until 3:20 a.m. on October 6, 1990, in order to manually raise the crossing gates to allow traffic to cross the highway grade crossings.

Subsequently, the Village filed a complaint against defendant alleging violations of section 18c—7402(b) and section 10—1—1A. On October 22, 1991, the case was tried before the trial court, sitting without a jury. After the Village presented its case, defendant moved for a directed verdict. In granting defendant's motion, the trial court ruled that the facts in the instant case did not amount to a violation of either the statute or the ordinance because the subject train did not *obstruct* traffic by being itself located in the grade crossing. It

appears that in so ruling the trial court attached significance to the fact that the predecessor to section 18c—7402(b) required the actual physical presence of the train on the grade crossing. The Village then filed a timely notice of appeal.

## ISSUE ON APPEAL

The sole issue to be determined in this appeal is whether the trial court erred in its construction of section 18c—7402(b) and section 10—1—1A, and thus consequently erred in granting defendant's motion for a directed verdict.

## OPINION

■ As a preliminary matter, we note that the language of section 10—1—1A is identical to that of section 18c—7402(b) and thus our discussion of section 18c—7402(b) is applicable to section 10—1—1A. However, for the sake of brevity, we shall refer only to section 18c—7402(b), which provides as follows:

"(b) Obstruction of Highway at Grade Crossing Prohibited. It is unlawful for a rail carrier to permit any train, railroad car or engine to *obstruct* public travel at a railroad-highway grade crossing for a period in excess of 10 minutes, except where such train, railroad or car is continuously moving or cannot be moved by reason of circumstances over which the rail carrier has no reasonable control. However, no employee acting under the rules or orders of the rail carrier or its supervisory personnel may be prosecuted for such violation." (Emphasis added.) Ill. Rev. Stat. 1989, ch. 95$^1$/$_2$, par. 18c—7402(b) (now 625 ILCS 5/18c—7402(b) (West 1992)).

Sections 1 and 2 of "An Act to revise the law in relation to the construction of the statutes" place an affirmative obligation upon Illinois courts to ascertain and give full effect to the legislative intent of our General Assembly. (Ill. Rev. Stat. 1989, ch. 1, pars. 1001, 1002 (now codified as 5 ILCS 70/1, 1.01 (West 1992)); see also *Kirwan v. Welch* (1989), 133 Ill. 2d 163, 549 N.E.2d 348.) In interpreting a disputed provision a court should first consider the statutory language itself as the best indication of the intent of the drafters. (*Hayes v. Mercy Hospital & Medical Center* (1990), 136 Ill. 2d 450, 557 N.E.2d 873.) Terms that are unambiguous, when not specifically defined, must be given their plain and ordinary meaning. *People v. Moore* (1978), 69 Ill. 2d 520, 372 N.E.2d 666.

■ Thus, the Village argues that the plain meaning of the language of section 18c—7402(b) and its use of the term "obstruct" evinces a clear legislative intent by the General Assembly to minimize blockage of public travel across railroad highway grade

crossings. Moreover, nothing in the provision's language requires a train to be actually situated in the grade crossing itself. Furthermore, the Village asserts that the method by which a train, railroad car or engine obstructs a grade crossing is unimportant; rather, it is the desire to limit the obstruction of public travel that animates section 18c—7402(b). We agree for two reasons.

First, in *People v. Indiana Harbor Belt R.R. Co.* (1981), 102 Ill. App. 3d 811, 430 N.E.2d 104, the appellate court interpreted the term "obstruct" within the context of the predecessor statute to section 18c—7402(b) and in doing so employed Webster's Third New International Dictionary (1976). Thus, the court held obstruct to mean "1. to block up: stop or close up; *** 2. to be or come in the way of: hinder from passing, action or operation; *** 3[.] cut off from sight: shut out." (*Indiana Harbor Belt R.R.*, 102 Ill. App. 3d at 814.) More recent dictionaries which we have consulted contain almost exactly the same definition.

In the case *sub judice*, defendant's actions met all three of the definitions of obstruct. Clearly, the train blocked up, stopped, closed, came in the way of, hindered from passing, action or operation, and shut out public traffic from traversing the grade crossing by its triggering of the device lowering the crossing gates. Thus, both the spirit and the letter of the law were violated by defendant's conduct.

Secondly, "[a]n amendment of an unambiguous statute indicates a purpose to *change the law*, and the Illinois Supreme Court has held that a statutory amendment is an appropriate source of discerning legislative intent." (Emphasis added.) (*Indiana Harbor Belt R.R.*, 102 Ill. App. 3d at 815, citing *O'Connor v. A&P Enterprises* (1980), 81 Ill. 2d 260, 408 N.E.2d 204.) Here, the predecessor to section 18c—7402(b) stated in no uncertain terms that a train must stand upon the tracks within the crossing. (See Ill. Rev. Stat. 1971, ch. 114, par. 70.) Language requiring the physical presence of a train upon a grade crossing is obviously omitted from section 18c—7402(b). Thus, we believe such omission to manifest an intent of the General Assembly to remove the physical presence requirement from the provision.

### DISPOSITION

In light of the aforementioned, we find that the trial court's granting of a directed verdict for defendant was in error and, consequently, we reverse the judgment of the circuit court of Cook County and remand this cause for further proceedings consistent with this decision.

Reversed and remanded.

RIZZI and CERDA, JJ., concur.